**UNITED STATES ex rel. Calvin FRIZER,
Relator-Appellant,**

v.

**Daniel McMANN, Warden of Auburn
Prison, Auburn, New York,
Respondent-Appellee.**

**Docket 34039.**

United States Court of Appeals,
Second Circuit.

Submitted to Court in Banc,
April 1, 1970.

Decided Jan. 5, 1971.

Guy Miller Struve, New York City, on the brief, for relator-appellant.

Louis J. Lefkowitz, Atty. Gen. of State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen. and John G. Proudfit, Asst. Atty. Gen., on the brief, for respondent-appellee.

J. Lee Rankin, Corporation Counsel of City of New York, Frances Loren and Frances Morris, New York City, on the brief, amicus curiae, for Mayor of City of New York.

Lawrence N. Marcus, Counsel and William A. Bulman, Jr., Asst. Counsel, New York City, on the brief, amicus curiae, for Judicial Conference of State of New York.

Frank S. Hogan, Dist. Atty., Michael R. Juviler and Peter F. Schwindt, Asst. Dist. Attys., on the brief, amicus curiae, for District Attorney of New York County.

Eugene Gold, Dist. Atty., on brief, amicus curiae, for District Attorney of Kings County.

Thomas J. Mackell, Dist. Atty. and Peter Menoudakos, Asst. Dist. Atty., on the brief, amicus curiae, for District Attorney of Queens County.

Burton B. Roberts, Dist. Atty., Daniel J. Sullivan and Peter Grishman, Asst. Dist. Attys., on the brief, amicus curiae, for District Attorney of Bronx County.

Carl A. Vergari, Dist. Atty. and B. Anthony Morosco, Senior Asst. Dist. Atty., on the brief, amicus curiae for District Attorney of Westchester County.

William Cahn, Dist. Atty. and Jules E. Orenstein, Asst. Dist. Atty., on the brief, amicus curiae for District Attorney of Nassau County.

Michael F. Dillon, Dist. Atty., Joseph P. McCarthy, Asst. Dist. Atty., on the brief, amicus curiae, for District Attorney of Erie County.

William E. Hellerstein, Edward Q. Carr, Jr., Milton Adler, Robert P. Patterson, Jr., Phylis Skloot Bamberger and Gerard G. Betz, New York City, on the brief, amicus curiae, for Legal Aid Society.

John J. McAvoy, Paul G. Chevigny and Thomas J. O'Sullivan, III, New York City, on the brief, amicus curiae, for American Civil Liberties Union and New York Civil Liberties Union.

Lewis Wenzell, Chicago, Ill., on the brief, amicus curiae, for National Legal Aid and Defender Ass'n.

Edwin L. Gasperini, Leon Silverman and Patrick W. McGinley, New York City, on the brief, amicus curiae, for New York State Bar Ass'n.

Cravath, Swaine & Moore, Thomas D. Barr, George J. Wade, R. John Cooper, New York City, and Dorsey D. Ellis, Jr., Iowa City, Iowa, on the brief, amicus curiae, for Association of Bar of City of New York and Lawyers Committee for Civil Rights Under Law.

Before LUMBARD, Chief Judge, WATERMAN, Senior Circuit Judge,[*] and MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS, ANDERSON and FEINBERG, Circuit Judges.

LUMBARD, Chief Judge:

■ Calvin Frizer's appeal from the Northern District's denial of his habeas corpus petition, based on the elapse of one year from his arrest until his jury trial in Nassau County in which he was convicted of burglary in the second degree and attempted grand larceny in the second degree, was thought to raise important questions regarding due process and the Sixth Amendment right to speedy trial. Accordingly, on April 1, 1970, we granted Frizer's petition for rehearing *in banc* and requested numerous public authorities and interested organizations to file amicus briefs.[1]

---

[*] Judge Waterman was an active circuit judge at the time the court commenced *in banc* consideration of this case.

1. The order read as follows:

All the active judges concurring in the view that the delay in the trial of criminal cases, where defendants are held in jail awaiting trial, in the courts of many of the counties of New York raises serious questions of the violation of constitutional rights, the petition for rehearing in banc is granted.

The court requests that briefs amici curiae be filed within thirty days from the date of this order by the Judicial Conference of the State of New York, the New York City Criminal Justice Coordinating Council, the Mayor of the City of New York, the District Attorneys of the Counties of New York, Kings, Queens, Bronx, Westchester, Nassau and Erie, the Legal Aid Society of New York, the American Civil Liberties Union, the National Legal Aid and Defender Association, the New York State Bar Association and the Association of the Bar of the City of New York, in addition to the parties. The Judicial Conference of the State of New York, for the State, and the district attorneys, for their counties, are request-

The Attorney General's brief, filed May 15, 1970, advised us for the first time that, after Frizer's arrest on September 30, 1966 on the Nassau County charges, he was indicted in Queens County on October 7, 1966 and on October 20, 1966 he pleaded guilty to attempted grand larceny in the second degree and thereafter, on February 3, 1967, he was sentenced to Sing Sing for a term of one year and three months to two years. Upon our request for further information, Frizer's counsel, while agreeing to the facts regarding the intervening Queens conviction, asserted that Frizer was absent from Nassau County only a total of ten days because of the Queens County proceedings. The district court had not been advised about the Queens case; nor, according to Frizer's counsel, was it advised about all the attempts of Frizer's counsel to have the case tried.

In any event, it is now apparent that Frizer's case was not the case of a defendant held in jail in default of bail for one year before his case was reached for trial.

We agree with the result reached by a panel of this court, reported at 437 F.2d 1309, and affirm the order of the district court.

Meanwhile the number of habeas corpus petitions filed by prisoners in New York state prisons, many of which allege violation of constitutional rights by reason of long periods of time elapsing between arrest or charge and trial in the courts of New York, has assumed alarming proportions.

The Judicial Conference of the State of New York informs us by its brief amicus that, as of April 1, 1970, there were 2,899 persons accused of felony in New York

State who had been held in jail three months or more awaiting disposition of the charges against them. Almost 90% of defendants held in jail were facing charges in the five large metropolitan counties and two suburban counties, namely:

| | |
|---|---|
| New York County | 841 |
| Kings County | 790 |
| Bronx County | 533 |
| Queens County | 260 |
| Erie County | 58 |
| Nassau County | 29 |
| Westchester County | 22 |

The many amicus briefs filed at our request [2] advise us of the reasons for the delays in trying criminal cases. It is all too apparent that during the past few years the simultaneous development of numerous conditions has greatly increased the total elapse of time required to process felony charges to final disposition in the trial court by plea of guilty, conviction after trial, acquittal or dismissal.

The Judicial Conference brief summarizes 18 principal causes of delay, one or more of which delay the disposition of every New York criminal case:

1. The rising number of arrests and the consequent rise in the number of criminal matters coming into the courts.

2. A severe shortage of court facilities in some areas, especially in the City of New York.

3. Shortages of judicial manpower and of nonjudicial court personnel especially where the court system must be financed principally by localities.[3]

---

ed to advise the court in their briefs of the number of persons held in jail awaiting trial for more than three months and the reasons therefor and any other considerations they deem to be relevant to the questions presented.

The court reserves the right to require further oral argument.

2. The court appreciates the response of all those who were asked to submit amicus

briefs. The briefs have been candid and informative. They contain many valuable suggestions for the improvement of the present conditions.

3. The Judicial Conference brief states, p. 13 fn. 7:
"It is estimated by the Budget Officer of the Judicial Conference that the total annual cost of operating the statewide unified court system for the last fiscal

4. Manpower shortages in district attorneys' offices.

5. Manpower shortages in public defenders' offices and in legal aid societies.

6. Manpower shortages in the Department of Corrections in the City of New York which results in delays in producing prisoners in court.

7. A shortage of defense trial counsel resulting in adjournments because of conflicting engagements.

8. Adjournments sought by the People because of non-appearance of key witnesses and police officers.

9. Adjournments sought by the defense to prepare for trial and to investigate.

10. Adjournments sought by the defense for tactical purposes to discourage witnesses, shop for judges, etc.

11. Adjournments on motion of the defense, the prosecutor or the court to obtain a psychiatric report regarding defendant's ability to stand trial.

12. Some counties are served by part time district attorneys.

13. Most counties are served by part time assistant district attorneys.

14. The tremendous increase in pre-trial motions and hearings on search and seizure, confessions, identifications, etc.

15. The tremendous increase in post-conviction applications.

16. Delays in providing defendants with copies of minutes of preliminary proceedings.

17. The inordinate amount of time consumed in selecting jurors.

18. Mechanical problems in scheduling cases in courts which have numerous parts such as the Criminal Court of the City of New York.

year (April 1, 1969—March 31, 1970) was $160,000,000, of which only $30,-

The cumulative impact of these conditions on the many pending cases is apparent from the fact that in a large proportion of the 2,899 jail cases, where delays already were three months or longer, more than six months had elapsed since arrest by April 1, 1970. In many New York and Kings County homicide cases the detention before trial had already exceeded one year.

While the present condition in the metropolitan counties is frequently described as an "emergency," its progress has been certain and notorious for the past few years. Thus the situation is more accurately described as chronic. We are convinced that the continuance of this situation cannot excuse denial of due process rights in any particular case where a defendant has not been a party to the delay or absent other circumstances peculiar to his case. The Fourteenth Amendment guarantees to every defendant facing state criminal charges the due process right to a speedy trial. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). This is a most important constitutional right, and it is the duty of the federal courts to make independent inquiry to protect that right whenever there is a substantial claim of its violation. As the Chief Justice has recently stated for the Court:

> "The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality on the need to have charges promptly exposed. If the case for the prosecution calls on the accused to meet charges rather than rest on the infirmities of the prosecution's case, as is the defendant's right, the time to meet them is when the case is fresh. Stale claims have never been favored by the law, and far less so in criminal cases."

Dickey v. Florida, 398 U.S. 30, 37, 90 S.Ct. 1564, 1569, 26 L.Ed.2d 26 (1970). In his concurrence in the same case, Justice Brennan also noted society's inter-

000,000 was state-paid and the remainder was financed by cities and counties."

est in timely prosecution, saying at page 42 of 398 U.S., page 1571 of 90 S.Ct.:

"The Speedy Trial Clause protects societal interests as well as those of the accused. The public is concerned with the effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. Just as delay may impair the ability of the accused to defend himself, so it may reduce the capacity of the government to prove its case. See Ponzi v. Fessenden, 258 U.S. 254, 264, 42 S.Ct. 309, 312, 66 L.Ed. 607 (1922). Moreover, while awaiting trial, an accused who is at large may become a fugitive from justice or commit other criminal acts. And the greater the lapse of time between commission of an offense and the conviction of the offender, the less the deterrent value of his conviction." (Citations omitted.)

From the complexity of the difficulties which delay the disposition of criminal charges it is clear that there is no easy solution. Obviously each of the factors contributing to delay demands some attention. It is not our function to suggest the measures which need to be taken, the order of attention or the priority of claims upon the public purse. But it is apparent that there has been an egregious failure on the part of numerous public officials to anticipate the problems and to adopt measures necessary for their solution or their easing.

Our brothers in the state courts have been alive to these problems for some time. They are equally aware of the constitutional mandates which bind them as much as they bind us. They have on numerous occasions enumerated the guiding principles and in some cases they have dismissed charges where they have found failure to comply with the constitutional mandates.[4] We believe the state courts and the state legislature are better able to fashion a rule which will require standards of performance designed to guarantee speedy trials in state cases.

That some rule is required would seem obvious. Unless the state's machinery of justice is consciously geared to the observance of certain standards the state courts must spend an inordinate amount of time sifting the disputed facts in hundreds of cases. And this process must frequently be repeated in a federal court where the relief the defendant seeks has been denied by the state courts.

In 1967 the President's Crime Commission proposed that the period from arrest to trial in felony cases should be not more than four months. The Challenge of Crime in a Free Society, 155. See also the American Bar Association Standards Relating to Speedy Trial, adopted by the House of Delegates in February 1968, and the reference in the accompanying commentary to the practices of the states.

Of course, wherever a state statute sets a time limit within which trial should commence, in computing the time provision is made for excluding periods of delay. That sometimes the only defense in a criminal case is delay is an established rule of criminal law practice. Eventually the overwhelming majority of criminal proceedings will be

4. People v. Wallace, 26 N.Y.2d 371, 310 N.Y.S.2d 484, 258 N.E.2d 904 (1970) (11 month delay between indictment and arraignment); People v. Winfrey, 20 N.Y.2d 138, 281 N.Y.S.2d 823, 228 N.E.2d 808 (1967) (4½ year delay from initiation of criminal proceedings until indictment); People v. Bryant, 12 N.Y.2d 719, 233 N.Y.S.2d 771, 186 N.E.2d 127 (1962) (nearly 2 years delay from sentencing on earlier charges to arraignment on present indictment); People v. Agoglia, 35 A.D.2d 583, 313 N.Y.S.2d 428 (2d Dep't 1970) (13 months between arraignment and appearance of case on calendar for trial); People v. Sylvester, 29 A.D.2d 985, 290 N.Y.S.2d 220 (2d Dep't 1968) (14 months delay between release from Matteawan and trial); People v. Walston, 60 Misc. 2d 531, 303 N.Y.S.2d 239 (Sup.Ct., Nassau County 1969) (incarcerated 18 months awaiting trial; docket congestion is not good cause for delay).

settled by plea of guilty. Thus in New York about 85% of felony charges are terminated by pleas of guilty. In most cases much of the delay is fairly attributable to the defendant and measures taken by his counsel.

It is not the business of the federal courts to tell the state courts and the state authorities how state criminal proceedings are to be conducted. Our authority extends only to safeguarding the constitutional right of a speedy trial in particular cases when petitioners can establish that the state and its courts have failed to safeguard that right. We do feel that it is essential to facilitate the handling of the 1,000 state prisoner petitions which are now filed each year in the district courts of this circuit, and the more than 100 appeals which result therefrom. We expect that the attention being given the problem of speedy trial by the New York State authorities will make federal court review of petitions on that subject rare.

We note that on October 17, 1970, Chief Judge Fuld in his public statement regarding the state courts said that the "Administrative Board [of the Judicial Conference of New York] will undertake a consideration and study of the need for legislation or, alternatively, for an administrative directive, to require that criminal cases be brought to trial within a certain prescribed period of time after the defendant's indictment or arraignment." We therefore conclude that there is no need at this time for us to set specific standards to govern the consideration of claims of denial of speedy trial by state prisoners in the federal courts of this circuit.

We again call the attention of state authorities to the provisions of 28 U.S.C. § 2254. Briefly summarized this statute, as amended in 1966, provides that factual determinations made by a state court, after a hearing, shall be presumed to be correct unless the petitioner can establish that there were certain defects or omissions in the proceeding, such as failure to provide a "full, fair and adequate hearing." And the section specifically provides that "the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous."

From this it follows that state officials would be well advised to keep full and complete records regarding the progress of criminal prosecutions and the reasons for any and all delays. It is quite apparent in Frizer's case and in many of the state prisoner cases that the state representatives appearing in the federal courts have not been fully advised of all the facts relevant to the disposition of the case, and the state has frequently failed to make the kind of record in the state court which would have resulted in findings which were not later open to serious question in a federal court.

We are today announcing the adoption of standards in regard to prompt disposition of criminal cases for the district courts of the Second Circuit in the exercise of our supervisory power over the administration of criminal justice in the circuit. On September 10, 1970, the members of the circuit council conferred with the chief judges of the districts, the United States Attorneys, and representatives of the state bar associations of New York, Connecticut and Vermont and of the Association of the Bar of the City of New York, the Legal Aid Society and the American Civil Liberties Union. Thereafter the conferees filed written recommendations. Following this the circuit council circulated proposed rules to all the conferees and all the federal judges in the circuit and considered their comments. By separate order the circuit council is today publishing rules for the guidance of the federal courts of the Second Circuit to take effect six months from today, together with an accom-

panying statement. During this period the council will, of course, consider any further suggestions regarding the content of these rules.

Judgment affirmed.

FRIENDLY, Circuit Judge, (concurring), with whom MOORE and HAYS, Circuit Judges, concur:

I agree that the denial of the writ should be affirmed. But I would vacate the order granting *in banc* consideration as having been made under a misapprehension of the facts.

If ever there were a defendant who suffered no prejudice from trial delay, it was Calvin Frizer. As the panel's per curiam affirmance made clear, he was under almost continuous observation by Mrs. Hubbell from the moment he began entering her home to help himself to her property until she identified him and his truck when the police, responding to her telephone call, produced him for identification only a few minutes after he had left the premises. Frizer offered no semblance of a defense. Such appeal as there was in the case lay in counsel's assertion that Frizer had been languishing in jail for a year before the inevitable result of his trial, supposedly because of inability to make bail.

It now develops that during eight of these twelve months Frizer was serving a sentence for another attempted grand larceny in an adjacent county, a charge to which he had pleaded guilty. Despite some language in Smith v. Hooey, 393 U.S. 374, 378–379, 89 S.Ct. 575, 21 L.Ed. 2d 607 (1969), where there had been a six-year delay, I cannot believe the votes necessary for *in banc* reconsideration could have been mustered if the court had known this. Now that we do know, we should not dignify Frizer's case with an *in banc* opinion. The prescription of rules for federal trials under our supervisory power, 28 U.S.C. § 332, is quite another matter.