Samuel A. Spiegel, J.
This motion is made to dismiss the indictment on the ground that undue delay herein constitutes a deprivation of defendant’s right to a fair trial.
On February 11, 1971, “ Maurice ” Carter was arrested for the sale of heroin to a minor, Michael Walsh. This charge was dismissed without prejudice to the People, in the Criminal Court, on March 16, 1971. Defendant was indicted by the Grand Jury in Engs County on August 16, 1971.
On March 9, 1972, defendant was arrested under this indictment. Four days after this arrest, the Narcotic Addiction Control Commission (NACC) took custody of defendant under its own warrant, which stemmed from an escape from the NACC to which defendant had been certified for a period of up to three years on a previous drug charge. Thereafter, he was discharged from the NACC on August 27, 1972.
About four months after his discharge from NACC, defendant moved to dismiss the indictment in this case in Supreme Court, Engs County. This motion was not decided, because this case was to be transferred imminently from Supreme Court, Engs County, for immediate trial to the Special Narcotics Court. This case appeared on the Central Narcotics Court calendar on January 26,1973. The defendant was paroled the same *1022 day. 'He was also offered an immediate trial, which he refused,, claiming that a trial now would constitute irreparable harm as he could not properly prepare his defense because an undue length of time has elapsed, which has prejudiced him and deprived him of his constitutional right to a fair trial.
The Sixth Amendment provides: “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial,” etc.
In Klopfer v. North Carolina (386 U. S. 213 [1967]), the court declared" that the right to a speedy trial is as fundamental as any of the other rights secured by the Constitution.
The People indicate that much of the blame for the delay herein must be at least shared by defendant for giving a different date of birth and a wrong first name of “ Maurice ” at the time of arrest. He owed time to NACC under the name of “ Philip ” which had more to do with the delay than any negligence oii the part of the District Attorney.
On the other hand, defendant states that this is a simple case involving one sale with a police officer as an eyewitness and there was no reason for any delay at all. Defendant alleges he has suffered irreparable harm and prejudice since the undue delay herein makes it almost impossible to prepare his defense now, thereby depriving him of a “ fair ” trial.
What is meant by “ speedy trial ”?
. To truly define “ speedy trial” the dictionary definitions of fast, quick, prompt and expeditious are no help. It would appear that what was really intended was a trial not merely “ delayed ”, but- á trial which is “unduly delayed”. “Unduly delayed” would mean a lapse of time which should not Ifave occurred, which has prejudiced the defense, and which was not of the defendant’s making.
Accordingly, if the defendant was not responsible for an “undue trial delay” which has prejudiced his defense then it may be said that he was truly denied a fast trial, speedy enough to prevent prejudice.
An examination of the history of a “ speedy trial ” is appropriate. The first 10 Amendments to the Constitution were ratified on December 15, 1791. Fearful and suspicious of an all-powerful centralized Government, the States were reluctant to relinquish and subordinate their sovereign powers. The People, apprehensive about placing strong powérs into the hands of a new and untested union of the States insisted upon a Bill of Rights, the first 10 Amendments, guaranteeing all personal liberties and protection against possible oppression and tyranny, *1023 before they would ratify and adopt the new Constitution proposed by the Constitutional Convention of 1787. This was an era when frontier justice prevailed and when justice was dispensed at irregular intervals by Judges who rode the circuit and whose presence could not be foretold. When “ speedy trial ” was incorporated into the Sixth Amendment it was due to distance and unavailability to courts and Judges. It was intended to bring about frequent and periodic court days rather than to eliminate overcrowded calendars. It was intended to prevent long detention periods before a trial. It also called for a public trial to prevent secret inquisitions. While the circumstances were different in the 18th century, the principle is still the same today.
In Barker v. Wingo (407 U. S. 514, 519), the court said, “ The right to a speedy trial is genetically different from any of the other rights enshrined in the Constitution for the protection of the accused.”
On page 521 the court stated, ‘ ‘ A second difference between the right to speedy trial and the accused’s other constitutional rights is that deprivation of the right may work to the accused’s advantage. Delay is not an uncommon defense tactic. * * * Finally, and perhaps most importantly, the right to speedy trial is a more vague concept than other procedural rights. It is,, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.”
On page 522, the court went on to say, ‘ ‘ The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived.”
On page 523, the court further said, “We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months. The States, of course, are free to prescribe a reasonable period consistent with constitutional standards, but our approach must be less precise.” (Italics added.) The ramifications of the law on “ speedy trial ” in New York State are still in flux and undergoing constant exploration, development and refinement.
On page 527, the court explained, “ The nature of the speedy trial right does make it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but *1024 that fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process.”
On pages 529 to 533, the court finally held, ‘1 But the rule we announce today, which comports with constitutional principles; places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. We hardly need to add that if delay is attributable to the defendant, then his waiver ' may be given effect under standard waiver doctrine, the demand rule aside.
“We, therefore, reject both of the inflexible approaches — ■ the fixed-time period because it goes further than the Constitution requires; the demand-waiver rule because it is insensitive to a right which we have deemed fundamental. The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed. * * *
“ A balancing test necessarily compels courts to approachJ speedy trial cases on an'ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived . of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice ■to the defendant.
“ The length of the delay is to some extent a triggering mechanism. Until there is -some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provohe such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.
11 Closely related to length of delay is the reason the government assigns to justify the delay. Here, too," different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. * * *
*1025 “We have already discussed the third factor, the defendant’s responsibility to assert his right. Whether and how a defendant asserts his right is. closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, ' and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. * * *
“A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and • concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. * * *
. “ Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility. * * *
“ We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.” Only a hearing will make possible compliance with this foregoing mandate.
On pages 537 and 538, the court continued, “It is also true that many defendants will believe that time is on their side and will prefer to suffer whatever -disadvantages delay may entail * * * A defendant desiring a speedy trial, therefore, should have it within some reasonable time; and only special circumstances presenting a more pressing public need with respect to .the case itself should suffice to justify delay. Only if such special considerations are in the case and if they outweigh the inevitable personal prejudice resulting from delay would it be necessary to consider whether there has been or would be prejudice to the defense at trial.”
In People v. Prosser (309 N. Y. 353, 356) the Court of Appeals said, “The speedy trial guarantee, preventing undue delay between the time of indictment and trial, serves a three-fold purpose. It protects the accused, if held in jail to await trial, against prolonged imprisonment; it relieves him of the anxiety of public suspicion attendant upon an untried accusation of crime; and, finally, like statutes of limitation, it prevents him *1026 from being ‘ exposed to the hazards of a trial, after so great a lapse of time ’ that ‘ the means of proving his innocence may not be within his reach ’ — as, for instance, by the loss of witnesses or the dulling of memory. (Report of Commissioners on Practice and Pleading [1849], p. 342, quoted in McKinney’s Cons. Laws of N. Y., Book 66, pt. 2, Code Crim. Pro. [1945 ed.], p. 543: see, also, United States v. Provoo, 17 F. R. D. 183, 198, 203 [U. S. Dist. Ct., D. Md.], affd. 350 U. S. 857.) Its benefits may be claimed, therefore, by any person under indictment, whether he be imprisoned to await trial bn the pending charge, whether he be admitted to bail or whether he be a prisoner already serving a sentence in the same jurisdiction for a different crime. (See, e.g., People v. Corrado, 150 Misc. 787, 789-790; Frankel v. Woodrough, 7 F. 2d. 796, 798-799; Fulton v. State, 178 Ark. 841, 843-845; Harris v. State, 194 Md. 288, 296; State v. Smith, 10 N. J. 84, 93; Arrowsmith v. State, 131 Tenn. 480; Ex Parte Chalfant, 81 W. Va. 93; State v. Keefe, 17 Wyo. 227, 257-259. * * *
“ It is clear, then, that Prosser was entitled to a speedy trial, and it is equally clear that he did nbt receive one. Although what amounts to an undue delay is ‘ not fixed by the statute in days or months ’, depending as it does1 upon the circumstances of each particular case ’ (People v. Hall, 51 App. Div. 57, 62; see Beavers v. Haubert, 198 U. S. 77, 87) ”. (Italics added.)
In Barker v. Wingo (407 U. S. 514, supra) and in People v. Prosser (supra), the United States Supreme Court and our Court of Appeals have clearly indicated that it depends on the circumstances of each case as to whether the defendant was deprived of a fair trial because of the delay in affording him a speedy trial. The courts concede that the effect of a delay and the reason for a delay are not readily identifiable. Further,' that all the four factors of the guidelines and other related circumstances must be considered before a proper determination, can be made in any particular case.
In People v. Ganci (27 N Y 2d 418, 430) Judge Bbeitel in a concurring opinion stated that telescoping pretrial hearings into the main trial would impinge on the constitutional rights of a defendant “ I am unable, however, to agree to the telescoping, of what are now pretrial hearings into the main trial. It will likely impinge on the existing constitutional rights of defendants in limiting their opportunity to testify at the one and not at the other, and in depriving them of the opportunity to plan for the trial of the main case. In the long run, too, it will impair the prosecution side of the case by not giving the prosecutor *1027 advance notice of what evidence he can rely on and what he cannot rely on.”
In the same case Chief Judge Fuld in a dissenting opinion stated in effect that long trial delays cannot excuse denial of due process rights in any particular case where a defendant has not been a party to the delay.
“ The right to a speedy trial,” the Supreme Court recently wrote (Dickey v. Florida, 398 U. S. 30, 37, supra), “is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed * * * Stale claims have never been favored by the law, and far less so in criminal cases.”
“ It may well be that conditions will be improved in the future, and trial delays reduced, if the proposals suggested in the court’s opinion are adopted. The fact is, however, that we are. confronted, and must deal, with the situation as it exists today and affects this defendant and, although it is unfortunate that the lack of necessary facilities and personnel results in calendar congestion and long trial delays, that1 cannot excuse denial of due process rights in any particular case where a defendant has not been party to the delay ’. (People ex rel. Friser v. McMann, 437 F. 2d 1312, 1315, per Lumbard, Ch. J.; see, also, People v. Walston, 60 Misc 2d 531). ” (People v. Ganci, 27 N Y 2d 418, 431, supra.)
In both opinions of Judge Bbeitel and Chief Judge Fuld it becomes apparent that a pretrial hearing should be had and further that the issue as to whether defendant was a party to the delay must be determined.
The matter of dismissing an indictment on the merits because of undue delay calls for a careful and in-depth review of all the facts and cannot be summarily exercised merely on bare affidavits, particularly under the principles enunciated in the Barker case. Nor can the court give any less consideration to a defendant who contends that he has been denied his constitutional right to a fair trial because of an undue delay not of. his own making.
Reluctantly, but of necessity, this court rules that Barker adds another dimension to pretrial hearings to those already required by the Mapp, Wade, and Jackson v. Denno (378 U. S. 368) decisions.
■Since the scant facts submitted on this application are insufficient upon which to arrive at a determination of all the essential issues involved, this matter is referred to the Special Narcotics Court, Part A, for a hearing and determination as to whether defendant was deprived of his constitutional right to a fair trial herein.