In re MATLOCK TRAILER CORPORATION, Debtor,

WALTER E. HELLER AND COMPANY, SOUTHEAST, INC., Plaintiff,

v.

MATLOCK TRAILER CORPORATION, Defendant.

In re CUMBERLAND ENTERPRISES, INC., Northeast Enterprises, Inc., Northeast Enterprises of Columbus, Inc., Debtors.

T. Larry EDMONDSON, Trustee, in Bankruptcy for Cumberland Enterprises, Inc., Northeast Enterprises, Inc., Northeast Enterprises of Columbus, Inc., and on behalf of himself as sole stockholder of The 1727 Corporation, Plaintiff,

v.

2-STAR FOODS, INC., the Chipper Foods, Co., Inc., Gulf Coast Foods, Inc., Leon Moore, Moore & Associates, Inc., Venture Enterprises, Inc., Shoney's, Inc., David Wachtel, William Tell, Inc., Wilson C. Tate, Sr., Harold F. Morris, Mark R. Moore, Charles Cox, Jr., Tate, Cox & Moore, A Partnership, Sequel II Corporation, James C. Smith, Seafood Distributors, Defendants.

Bankruptcy No. 382–02778.
Adv. No. 382–0755.
Bankruptcy Nos. 381–01797, 381–00758 and 381–00757.
Adv. No. 382–0289.

United States Bankruptcy Court, M.D. Tennessee.

Jan. 26, 1983.

See also, Bkrtcy., 22 B.R. 626.

Wm. Caldwell Hancock, Daniel C. Kaufman, Waddey & Newport, Nashville, Tenn., for Matlock Trailer Corp.

John Bailey, Julie Jones, Bass, Berry & Sims, Nashville, Tenn., for Walter E. Heller and Co. Southeast, Inc.

Larry Stewart, Donelson, Stokes & Bartholomew, Nashville, Tenn., for The Chipper Foods Co., Inc. and 2-Star Foods, Inc.

Harry D. Lewis, Nashville, Tenn., for the Trustee in Cumberland Enterprises.

Before GEORGE C. PAINE, II and KEITH M. LUNDIN, Bankruptcy Judges.

MEMORANDUM AND ORDER

These matters are before the court on motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 915 of the Federal Rules of Bankruptcy Procedure and Rule 12(b)(1) of the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings by Bankruptcy Rule 712(b). Because the issues presented by the motions in these cases are identical, the matters were consolidated for hearing and opinion. The movants argue that the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("*Northern Pipeline*") removed this court's authority to adjudicate bankruptcy matters after December 24, 1982. Upon consideration of the briefs submitted,

argument of counsel, and the entire record, the court is of the opinion that it retains § 241(a) jurisdiction to adjudicate all bankruptcy cases [1] filed prior to December 24, 1982, including all adversary proceedings and related matters relevant to those cases, whenever filed. The motions to dismiss are therefore DENIED.

The defendant/debtor Matlock Trailer Corporation ("Matlock") manufactures, sells, leases and services commercial truck bodies and semi-trailers at a facility located in Nashville, Tennessee. Matlock employs more than 60 individuals earning an aggregate payroll in excess of $78,000 per month. On August 27, 1982, Matlock filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Matlock sought to reorganize its debts because its immediate expense obligations exceeded its current revenues, although its total assets exceeded liabilities by approximately two million dollars.

The plaintiff/creditor Walter E. Heller and Company Southeast, Inc. ("Heller") is a major commercial lender from whom Matlock obtained approximately $750,000 in operating funds in December, 1981. To secure this loan, Heller took a security interest in Matlock's raw materials, work-in-progress, inventories and the real estate upon which Matlock's facility is located. The total value of the collateral is approximately $1.7 million.

As a result of the filing of the bankruptcy petition, all actions by creditors such as Heller to collect debts from Matlock or levy against its property were stayed as a matter of law. See 11 U.S.C.A. § 362(a) (West 1979). On November 8, 1982, Heller filed a complaint seeking to terminate the automatic stay and to obtain other appropriate relief, alleging in essence that its secured position was not adequately protected and that Matlock could not be successfully reorganized. See 11 U.S.C.A. § 362(d) (West 1979). Heller also filed a motion to convert the Chapter 11 case to one under Chapter 7, to appoint a trustee, or, in the alternative, to dismiss the petition because of the alleged inability of Matlock to reorganize. Matlock timely responded to Heller's complaint and motion, denying the factual assertions and legal positions contained therein.

Heller's complaint for relief from the automatic stay was heard at a preliminary hearing and pretrial conference on December 8, 1982. At that time counsel announced that the parties had tentatively agreed on a settlement and that an agreement would be entered, subject to court approval, following an opportunity for interested parties to be heard. The parties agreed that a hearing on the settlement would be set at a date future, that the preliminary hearing on relief from the automatic stay would be consolidated with the final hearing, and that the automatic stay would continue in the interim. The settlement, however, was never consummated and an agreed order was entered on December 23, 1982, formally setting the final hearing for January 6, 1983, and continuing the automatic stay "pending further order of this court." This order was not appealed by either party.

At the scheduled hearing, counsel for Heller advised the court that he had filed a motion to dismiss the Chapter 11 proceeding for lack of subject matter jurisdiction in this court as well as in the district court. He also filed a motion to dissolve the automatic stay for want of jurisdiction. In order to hear the jurisdiction motions before a possibly unnecessary final hearing on the merits and to allow the parties leave to file briefs on the issues, the stay proceeding was continued until after argument on the jurisdiction motions on January 19, 1983.

On May 12, 1980, Cumberland Enterprises, Inc. filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the Southern District of Indiana. On May 24, 1980, Northeast Enterprises, Inc. and Northeast Enterprises of Columbus, Inc. filed Chapter 7 petitions with the United States Bankruptcy Court for the Southern District of Ohio. On May 5, 1981, the Unit-

---

1. In referring to "bankruptcy cases," the court means all bankruptcy petitions, voluntary and involuntary, filed under Title 11 U.S.C.A. § 101 et seq. (West 1979).

ed States Bankruptcy Court for the Southern District of Indiana transferred the Cumberland Enterprises, Inc. case to the United States Bankruptcy Court for the Middle District of Tennessee. On February 1, 1982, the United States Bankruptcy Court for the Southern District of Ohio transferred the Northeast Enterprises, Inc. and Northeast Enterprises of Columbus, Inc. cases to the United States Bankruptcy Court for the Middle District of Tennessee. On April 12, 1982, this court ordered the consolidation of the cases of Cumberland Enterprises, Inc., Northeast Enterprises, Inc., and Northeast Enterprises of Columbus, Inc. A trustee was subsequently appointed to administer the estate.

On May 11, 1982, the trustee filed a complaint against a number of defendants alleging conversion of assets, preferential transfers, fraudulent conveyances, and seeking the subordination of all claims held by the defendants. The trustee asserted jurisdiction pursuant to 28 U.S.C.A. §§ 1471 and 1481 (West Supp.1982), as well as 11 U.S.C.A. § 105 (West 1979). Several of the defendants, including Chipper Foods Co., Inc., moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 915 of the Bankruptcy Rules and Rule 12(b) of the Federal Rules of Civil Procedure. On August 18, 1982, this court issued a memorandum and order denying defendants' motions and noting jurisdiction to act during the pendency of the *Northern Pipeline* stay pursuant to 28 U.S.C.A. § 1471 (West Supp.1982). *Schneider v. 2-Star Foods, Inc. (In re Cumberland Enterprises),* 22 B.R. 626 (Bkrtcy.M.D.Tenn.1982). The order was issued without prejudice to the defendants' right to raise the jurisdictional issue after the stay expired. Defendant Chipper Foods Co., Inc. has subsequently renewed its objection to jurisdiction. For the purpose of resolving the jurisdictional question, this motion was consolidated with the *Matlock* matter.

Although this court's jurisdiction under the Bankruptcy Reform Act as conferred through 28 U.S.C.A. § 1471 (West Supp. 1982) was declared unconstitutional in *Northern Pipeline,* the Supreme Court ap-

plied its holding prospectively and did not intend the decision to impact cases filed in reliance on the presumed validity of the Bankruptcy Code. The plurality stated that:

> Having concluded that the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) is unconstitutional, we must now determine whether our holding should be applied retroactively to the effective date of the Act. Our decision in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), sets forth the three considerations recognized by our precedents as properly bearing upon the issue of retroactivity. They are first, whether the holding in question 'decid[ed] an issue of first impression whose resolution was not clearly foreshadowed' by earlier cases, id., at 106, 92 S.Ct. 349, 30 L.Ed.2d 296; second, 'whether retrospective operation will further or retard [the] operation' of the holding in question, id., at 197, 92 S.Ct. 349, 30 L.Ed.2d 296; and third, whether retroactive application 'could produce substantial inequitable results' in individual cases, ibid. In the present case, all of these considerations militate against the retroactive application of our holding today. It is plain that Congress' broad grant of judicial power to non-Art III bankruptcy judges presents an unprecedented question of interpretation of Art III. It is equally plain that retroactive application would not further the operation of our holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts. We hold, therefore, that our decision today *shall apply only prospectively.* (emphasis added and footnotes omitted).

102 S.Ct. at 2880. Justices Rehnquist and O'Connor concurred in the application of prospectivity. 102 S.Ct. at 2882. (Rehnquist, J. and O'Connor, J., concurring).

■ The prospectivity of the Court's opinion was based on the Court's insightful conclusion that application to pending cases would cause irreparable hardship to credi-

tors and debtors alike. It is a well-settled principle that where a decision could produce substantial inequitable results if applied to all cases, there is an ample basis for making the decision prospective only in nature. *Cipriano v. Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Great Northern R. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). The prospective application of judicial decisions has been most conspicuously observed in the area of criminal procedure. *See, e.g., Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) (constitutional standards for search incident to arrest); *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969) (constitutionally required counsel at lineups); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) (constitutional restrictions on search and seizure). However, the Court has recognized the doctrine of prospectivity outside the criminal area many times. *See, e.g., Cipriano v. Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (elections); *Allen v. Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) (elections); *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (issuance of bonds). One clear indication from these decisions is that "prospective" has no single meaning. The circumstances of each particular case must be analyzed to determine what is meant by a "prospective application." As the Court has noted: "We must weigh the merits and demerits *in each case* by looking to the prior rule in question, its purpose and effect, and whether retrospective application will further or retard its operation." *Linkletter v. Walker,* 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965) (emphasis added).

The prospective nature of the Court's decision in *Northern Pipeline* must be interpreted and applied to five categories of cases: (1) bankruptcy cases filed under the Bankruptcy Reform Act, completed and closed before June 28, 1982; (2) bankruptcy cases filed after June 28, 1982, but completed and closed before December 24, 1982; (3) bankruptcy cases which are uncompleted because of unresolved matters or proceedings filed prior to June 28, 1982; (4) bankruptcy cases which are uncompleted because of unresolved matters or proceedings filed between June 28, 1982 and December 24, 1982; and (5) uncompleted bankruptcy cases that require adjudication of matters or proceedings filed after December 24, 1982. The court finds that in *Northern Pipeline* the Court intended bankruptcy courts to continue to exercise complete jurisdiction over all five categories of cases.

### CATEGORIES 1 AND 2

The Court clearly intended all bankruptcy court orders and decisions entered prior to December 24, 1982, the effective date of *Northern Pipeline,* to be immune from collateral attack. The Court has repeatedly sanctioned actions taken even under unconstitutional authorization when making prospective application of their decisions. *See Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Georgia v. United States,* 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973); *Fortson v. Morris,* 385 U.S. 231, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966); *Maryland Committee v. Tawes,* 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964). The Court has sought to protect the reliance interest of those parties who have taken actions pursuant to the presumed validity of an act of Congress. Thousands of litigants relied on the constitutional validity of the Bankruptcy Reform Act prior to the Court's unprecedented interpretation of Article III in *Northern Pipeline.* Reliance on the continued viability of the bankruptcy system was no less significant after the Court's announcement of *Northern Pipeline.* Debtors filing bankruptcy petitions and parties filing adversary proceedings relied on the prospective language of *Northern Pipeline* itself, the Court's stay of their judgment[2] and the subsequent extension of

---

**2.** In staying their judgment, the Court noted that "[t]his limited stay will afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy law." 102 S.Ct. at

the stay, the Court's reaffirmation of the prospective nature of their decision in *United States v. Security Industrial Bank,* —— U.S. ——, —— n. 5, 103 S.Ct. 407, 410 n. 5, 74 L.Ed.2d 235, 240 n. 5 (1982)[3] and the numerous judicial interpretations by bankruptcy courts, including a decision by this court, that § 241(a) jurisdiction was retained during the interim period. *See Schneider v. 2-Star Foods, Inc. (In re Cumberland Enterprises),* 22 B.R. 626 (Bkrtcy.M.D.Tenn.1982).[4] *See also Armco, Inc. v. Cherry Pond Coal Co.,* 21 B.R. 592 (S.D.W.Va.1982), *rev'g* 21 Bankr. 588 (Bkrtcy.S.D.W.Va.1982); *Zinker v. Levy (In re M.J.S. Apparel, Inc.),* 22 B.R. 736, 737 (Bkrtcy.E.D.N.Y.1982); *National Sugar Refining Co. v. U.S. Brands Corp.,* 22 B.R. 279 (Bkrtcy.S.D.N.Y.1982); *Hassett v. Ganz (In re O.P.M. Leasing Services, Inc.),* 21 B.R. 986 (Bkrtcy.S.D.N.Y.1982); *Otero Mills, Inc. v. Security Bank & Trust,* 21 B.R. 645 (Bkrtcy.D.N.M. 1982). The Court intended to protect this reliance interest and the rights of all those parties who went through the bankruptcy process prior to December 24. *Northern Pipeline* cannot be interpreted to undo the actions which have been taken in the years since the passage of the Bankruptcy Reform Act. The rights of these parties have vested thus requiring that the status quo be maintained and these orders not be overturned.

## CATEGORIES 3, 4 AND 5

While this court does not presently address the issue of whether jurisdiction exists to entertain bankruptcy *cases* filed after December 24, the only reasonable interpretation to be given to the prospective language of the Court's decision is that bankruptcy courts should continue to complete those cases, matters and proceedings which were filed on or before the effective date of *Northern Pipeline*. As a necessary corollary, this court must also continue to have jurisdiction over matters and proceedings which are filed after December 24, 1982 within cases commenced before that date.

In applying rulings "prospectively" in the criminal area, the Court has often allowed cases to continue despite constitutional questions and infirmities concerning underlying issues. For example, in *Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), the court emphasized that their decision in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which altered a series of opinions relevant to searches incident to arrest, would not be applied to searches conducted prior to June 23, 1969. The Court noted

2880. The stay of judgment is clearly distinguishable in effect and intention from the prospective application of the declaration of unconstitutionality of § 241(a). The stay was designed to allow Congress an opportunity to remedy the constitutional infirmities identified in *Northern Pipeline*. By applying the holding prospectively, the Court was acknowledging the peculiar nature and length of bankruptcy cases. The Court was obviously aware that an immediate application of its decision would leave a debtor no forum in which to complete a pending bankruptcy. The prospect of such an alternative would create an unacceptable void in a time of intense economic dislocation. There is certainly no evidence that the Court intended the stay to merely provide a grace period within which parties would have to complete their bankruptcy cases. It would be unrealistic to place such time parameters on a bankruptcy case. The ongoing nature of a bankruptcy case, particularly in the areas of Chapter 11 and Chapter 13, requires a significant gap period between the filing of a petition and a final order closing the case.

3. The Court noted in *United States v. Security Industrial Bank* that "[b]ecause our decision in *Northern Pipeline* is prospective only ... and because we have stayed the issuance of our mandate in that case to December 24, 1982 ... that decision does not affect the judgment in this case." —— U.S. ——, —— n. 5, 103 S.Ct. 407, 410 n. 5, 74 L.Ed.2d 235, 240 n. 5 (1982).

4. This court did not address the questions raised by the instant motions in *Cumberland Enterprises*. The court merely decided the issue of whether it possessed jurisdiction to act during the Court imposed stay, and did not determine whether the court retained jurisdiction to complete cases filed prior to *Northern Pipeline* or filed during the pendency of the stay. This court's determination of jurisdiction during the stay was subsequently supported by the Supreme Court's decision in *United States v. Security Industrial Bank*. (*See* note 3, *supra*).

that "the *Chimel* rule will receive sufficient implementation by applying it to those cases involving the admissibility of evidence seized in searches occurring after *Chimel* was announced." 401 U.S. 646 at 656, 91 S.Ct. at 1154. Rather than distinguishing between cases which were awaiting trial and those which were on review or appeal, the Court elected to restrict their opinion to those acts occurring after the opinion was announced. *See also Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969) (decision in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) would not invalidate lineups conducted prior to the effective date of the opinion). In these cases, law enforcement officials had reasonably relied on the constitutionality of their actions and the Court determined that this reliance should not be prejudiced by having a case dismissed or interrupted in midtrial by an unanticipated construction of the Constitution by the Supreme Court. Cases involving constitutionally tainted searches and lineups were, thus, allowed to proceed on the theory that justice is better served when cases begun in reliance on a particular constitutional interpretation are allowed to continue to completion.[5]

A similar (if not more compelling) interest is certainly served by allowing bankruptcy cases filed prior to December 24 to be completed. Litigants' reliance on the continued viability of the bankruptcy system is no less reasonable and no less deserving of protection than the actions of police officers sanctioned by the Court in *Williams, Foster* and other cases making prospective applications of newly-announced law. Only continued jurisdiction over filed bankruptcy cases gives meaning and effect to the Court's concern for fairness, equity and the prevention of hardship which motivated their decision to apply *Northern Pipeline* prospectively. Any other holding would create an inequitable travesty. Litigants would be treated differently based solely on the date a particular proceeding was completed.

For example, if two Chapter 7 debtors filed their cases on the same day and the clerk's office set the first for a discharge hearing on December 23, 1982 and the other for December 27, 1982, the cases might have entirely different outcomes although both debtors filed in full reliance on the constitutionality of the Bankruptcy Reform Act. The debtor who received the discharge on December 23, 1982 would realize the protection intended by the Bankruptcy Code. Similarly, all creditors would have their rights adjudicated under the same provisions. Absent the prospective application of *Northern Pipeline,* the second debtor whose case was not completed until December 27, 1982, would not receive a valid order of discharge solely by the passage of a single day and by events completely beyond his control.

Another example involves litigants who filed and tried a *Northern Pipeline* style adversary proceeding prior to December 24, 1982 (or prior to June 28, 1982), but part of the case was taken under advisement until December 27, 1982. The portion of the case decided at trial would be a valid judgment, despite being acted upon by a bankruptcy court. The remaining issues, although resolved by the same court, would be without the validity of a court order because they were decided after the effective date of *Northern Pipeline.* The litigants involved would be severely impacted solely by the bankruptcy court's delay in the release of its opinion. Part of the issues would be res judicata while the remaining questions would be unresolved if not unresolvable.

Perhaps the best example of inequity is before this court in one of the instant cases. If the court had required the parties in *Matlock* to proceed to trial at the prelimi-

---

5. In applying principles of prospectivity to their decision holding portions of the Industrial Loan and Thrift Companies Act unconstitutional, the Tennessee Supreme Court has similarly considered the issues of fairness and public policy and applied federal precedents to sanction the legitimacy of notes and obligations incurred under the Act, as well as suits to enforce those obligations, and to "apply the new rule to the case at bar, but prospectively to all present or future litigants." *Cumberland Capital Corp. v. Patty,* 556 S.W.2d 516, 542 (Tenn.1977).

nary hearing rather than continuing the hearing because of an alleged agreement, and Matlock had prevailed, (and the facts certainly indicate a reasonable likelihood of that result), then that judgment would be accorded the full protection of the bankruptcy laws and Matlock's reorganization would continue with the 60 jobs of its employees along with their monthly payroll remaining intact. An altogether different outcome would occur if Heller had agreed at the preliminary hearing that Matlock had "a reasonable likelihood" of prevailing at the final hearing and the matter continued until a date after the *Northern Pipeline* stay was lifted. Then under Heller's reasoning, no court would have jurisdiction to lift the stay and it would automatically terminate 30 days from December 8 pursuant to 11 U.S.C.A. § 362(e) (West 1979). Matlock would, thus, be out of business (and 60 jobs lost) merely because of· the scheduling of the final hearing.

Certainly the Court did not envision that the numerous litigants who filed cases on or before December 24, 1982, who all relied on the presumed constitutionality of an act of Congress, should have their rights treated differently as a result of *Northern Pipeline.* There is absolutely nothing in the *Northern Pipeline* opinion to indicate that the Court intended to promote a "race to judgment" so that parties who received judgments prior to December 24 would be protected and those whose cases could not be accommodated by the court's schedule or were taken under advisement would be prejudiced.

Finally, if· the movants' interpretation of "prospective" is accepted, the administration of all bankruptcy cases would come to a grinding halt. Movants contend that the Supreme Court's "prospectivity" holding protects only orders of the bankruptcy court which become final before December 24 and does not permit the bankruptcy court to complete cases still pending on that date. By this analysis, the bankruptcy courts in the United States would have pending on their dockets some 700,000 cases filed before the effective date of *Northern Pipeline,* but would be without jurisdiction to enter orders to bring the cases to comple-

tion. The practical effect is to reduce bankruptcy to a meaningless concept. Parties, such as those in the instant cases, would be unable to obtain relief because the automatic stay was activated in a period of undisputed jurisdiction, yet now the court is without jurisdiction to enter an order to modify or dissolve the stay. Similarly, the court would be without authority to enter discharges, order the turnover of property, appoint a trustee, determine the dischargeability of debts, approve plans of reorganization, or perform any other number of necessary functions. Bankruptcy cases pending before this court would disappear with consequent unimaginable waste and prejudice to the parties involved if this court accepted movants' argument that prospectivity is limited to orders entered before December 24, 1982. Only a continuous adjudication of these cases by the bankruptcy courts can protect the rights of all the parties involved.

The parade of inequities occasioned by the movants' attempt to circumscribe the prospective nature of *Northern Pipeline* could be traced ad nauseum through an endless series of combinations and permutations. However, it is clear that movants' interpretation of the term "prospective" is blatantly inconsistent with the Supreme Court's express concern for injustice and hardship and would eviscerate the purpose behind the Court's prospective application. In order to accord deference to the Court's concerns for justice to litigants, this court is required to reject the movants' interpretation of "prospective application."

In anticipation of the failure of the United States House of Representatives and the United States Senate to act in accordance with *Northern Pipeline* and the refusal of the United States Supreme Court to extend its stay, the Judicial Conference of the United States requested the Director of the Administrative Office of the United States Courts to provide each circuit with a proposed rule to permit the bankruptcy system to continue without disruption. Judicial Conference Resolution (September 23, 1982). The director, William E. Foley, then

provided proposed rules drafted within the United States Court of Appeals for the Ninth Circuit. *See, e.g., Docter v. Gleicher (In re Stillman),* 26 B.R. 834 (Bkrtcy. D.Md.1982); De Concini Hearing, National Conference on the Resolution of the Bankruptcy Crisis, Washington, D.C., January 7, 1983; Letters from William E. Foley (September 27 and December 3, 1982) (discussing proposed rule). Subsequently, the Judicial Council for the United States Court of Appeals for the Sixth Circuit promulgated an "emergency rule" which was adopted by the United States District Court for the Middle District of Tennessee as Administrative Order No. 28 on December 24, 1982. The Administrative Order provides that:

> *(h) Effective Date and Pending Cases*
> This rule shall become effective December 25, 1982, and shall apply to all bankruptcy cases and proceedings not governed by the Bankruptcy Act of 1898 as amended, and filed on or after October 1, 1979. Any bankruptcy matters pending before a bankruptcy judge on December 25, 1982, shall be deemed referred to that judge.

*In re Administration of the Bankruptcy System,* Adm. Order No. 28 at 9 (M.D.Tenn. Dec. 24, 1982).

The emergency rule and the section quoted were drafted on the inaccurate assumption that this court's jurisdiction over pending bankruptcy cases was diminished effective December 24. The prospective nature of *Northern Pipeline* preserves § 1471 jurisdiction and, therefore, bankruptcy courts are vested with exclusive jurisdiction over all bankruptcy cases filed prior to December 24. This court continues to act in pre-December 24 cases based on its independent statutory grant of jurisdiction without reliance on any attempt to transfer authority from the district court to the bankruptcy court. Accordingly, the "emergency rule" is not applicable in bankruptcy cases filed prior to the effective date of *Northern Pipeline.* The emergency procedures for case adjudication requiring referral and review by the district court are unnecessary

and are contrary to the exclusive jurisdiction provided to bankruptcy courts by 28 U.S.C.A. § 1471 (West Supp.1982). The court does not presently address the constitutionality and applicability of the emergency rule to *cases* filed after December 24.

Accordingly, movants' motions to dismiss for lack of subject matter jurisdiction are DENIED and the consolidated final hearing in *Matlock* is hereby reset for the 8th day of March, 1983 at 1:00 p.m. in Room 216, Customs House, 701 Broadway, Nashville, Tennessee.

IT IS SO ORDERED.