In re BASIN REFINING, INC., OKC Refining, Inc., OKC Transport, Inc., OKC Trading Company, OKC Pipeline, Inc., OKC Leasing Corp., Okmulgee Service Corporation d/b/a Basin Refining, Inc., Debtors.

INTERFIRST BANK DALLAS, N.A., formerly known as First National Bank in Dallas, Plaintiff,

v.

BASIN REFINING, INC., et al. OKC Corp. Liquidating Trust, CKB & Associates, Inc. Defendants.

BASIN REFINING, INC., Plaintiff,

v.

CKB & ASSOCIATES, INC., Defendant.

Bankruptcy Nos. 381–00792–F to 381–00798–F.
Adv. Nos. 382–0622, 382–1027.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

April 8, 1983.

Frank Finn, Thompson & Knight, and John L. King, Dallas, Tex., for debtor, Basin Refining, Inc., et al.

Paul D. Hoover, Dallas, Tex., for OKC Corp. Liquidating Trust.

Thomas Graves, Johnson & Swanson, Dallas, Tex., for InterFirst Bank Dallas.

William Treeby, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, and Jerry K. Sawyer CKB & Associates, Dallas, Tex., for CKB & Associates.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

### BACKGROUND

Basin Refining, Inc., OKC Refining, Inc., OKC Transport Corporation, OKC Trading Company, OKC Pipeline, Inc., OKC Leasing Corporation, and Okmulgee Service Corporation, d/b/a Basin Refining, Inc., filed Voluntary Chapter 11 Petitions in this Court on June 6, 1981. The cases were consolidated and the debtor herein, Basin Refining, refers to all the entities collectively. The instant controversy arises from a lease, and two extensions thereof, which Basin Refining entered into pursuant to Orders of this Court of August 24, 1981 (the lease), January 4, 1982 (the first lease extension) and June 14, 1982 (the second lease extension).[1] Under the lease and the first lease extension, OKC Liquidating Trust, hereinafter OKC, and its assignee CKB & Associates, Inc., hereinafter CKB, and CKB only under the second lease extension agreed to operate Basin Refining's facility in Okmulgee, Oklahoma, hereinafter the Refinery. Because of concern for protecting Basin Refining's inventory in the Refinery, and any

interest of InterFirst Bank Dallas, hereinafter the Bank, claiming a first lien in the inventory at the Refinery, the lease and the extensions contained certain provisions, *inter alia,* requiring beginning and ending inventories of materials at the Refinery, and payment for annual turnaround expenses for repairing and maintaining the Refinery.

It was at all times contemplated by this Court and the parties that, at the end of the lease, Basin Refining would be made whole, not only by payment of rent, but by being given credit for any decrease of its inventory. To that end a $1.5 million dollar letter of credit was provided to the Bank; and was drawn on both at the end of the lease and the first lease extension. In fact, the parties are in agreement on the events up to about June 1, 1982, when discussions were undertaken to renew the lease on the Refinery which would expire on June 30, 1982. The status of the Refinery, the lease and inventory after June 30, 1982 are in issue.

Therefore, on January 25, 1983, this court held a trial in which three issues only were heard and decided: 1) the validity of the lease of the Refinery, if any, after June 30, 1982; 2) the accounting for any diminution in inventory from the beginning to the end of the lease; and 3) CKB's application for approval of turnaround expenses. Several issues raised by the Bank's initial Complaint, filed on June 18, 1982, and by OKC and CKB in their various counterclaims on the extent, validity and priority of the Bank's claimed lien were severed to be heard separately at a later date. *Bankruptcy Rule 742; Fed.R.Civ.P. 42(b).* Subsequent to the trial held in this Court, three issues have been raised which must be addressed: 1) whether this Court has jurisdiction under the Local Rule; 2) whether the issues decided involving the lease, inventory and turnaround expenses are "related proceedings" in which this Court may only enter proposed findings of fact and conclu-

---

1. The terms and conditions of the lease and the two extensions are fully discussed in the Court's Findings of Fact and Conclusions of Law, which are entered pursuant to Bankruptcy Rule 752, in conjunction with this Memorandum Opinion.

sions of law; and 3) whether this Court properly denied CKB and OKC's demands for a jury trial.

## I. *Jurisdiction*

■ This Court finds it has subject matter jurisdiction. *In re Braniff Airways, Incorporated, et al.,* 700 F.2d 214 (5th Cir. 1983), *aff'g In re Braniff Airways Incorporated, et al.,* 27 B.R. 231, 10 B.C.D. (CRR) 30 (D.C.N.D.Tex.1983). Although the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), hereinafter *Northern Pipeline,* held that § 241(a) of the Bankruptcy Act of 1978, the jurisdictional grant to bankruptcy courts, was unconstitutional, this Court may constitutionally exercise jurisdiction pursuant to the Local Rule of the Northern District of Texas Concerning Bankruptcy Cases and Proceedings, hereinafter the Local Rule, adopted by the Northern District of Texas on December 21, 1982.

To date, many courts have considered the constitutionality of the Local Rule, as adopted by various United States District Courts. *In re Braniff; see e.g., In re Northland Point Partners,* 26 B.R. 1019, 10 B.C.D. 95, 97 (D.C.E.D.Mich.1983), (held reference to bankruptcy court valid under Local Rule, which Sixth Circuit Judicial Council had power to adopt, is valid. *Northern Pipeline* does not create a jurisdictional lapse, district courts retain original bankruptcy jurisdiction under 28 U.S.C. 1334); *In re Stillman,* 26 B.R. 834, 10 B.C.D. (CRR) 5, 7 (Bkrtcy.Md.1983), (Court declines to hold Local Rule unconstitutional stating: "[I]t would be an act of judicial anarchy for this court not to follow a rule adopted unanimously by the judges of its appellate court." *Id.* 26 B.R. 834, 10 B.C.D. at 7); *contra, In re Otero Mills,* 10 B.C.D. (CRR) 89 (Bkrtcy.N.M.1983), ((A)ll of § 241(a) of the Bankruptcy Act is unconstitutional and neither the Bankruptcy Court nor the District Court retains subject matter jurisdiction over "related" matters. But Bankruptcy Court stays its judgment and certifies the issue to the District Court under the Local Rule.); *In re Color Craft Press,* 27 B.R. 392, 10 B.C.D. (CRR) 53 (Bkrtcy.Utah 1983); *In re Matlock Trailer Corporation,* 27 B.R. 311, 10 B.C.D. (CRR) 34 (Bkrtcy.M.D. Tenn.1983), (" '(E)mergency rule' is not applicable in bankruptcy cases filed prior to the effective date of *Northern Pipeline.*" *Id.* 27 B.R. 311, 10 B.C.D. at 39. Therefore the court can continue to hear all adversary proceedings whenever filed connected to bankruptcy cases filed before December 24, 1982); *In re Conley,* 26 B.R. 885, 10 B.C.D. (CHR) 10 (Bkrtcy.M.D.Tenn.1983) (Court lacks subject matter jurisdiction over any bankruptcy case filed after December 24, 1982. Local Rule is unconstitutional because District Court lacks power to implement Rule creating jurisdiction in Bankruptcy Court.); *In re Jorges Carpet Mills,* 27 B.R. 333, 10 B.C.D. (CHR) 1 (Bkrtcy.E.D. Tenn.1983) (Court does not reach issue of constitutionality of local rule but assuming its validity concludes District Court retains no bankruptcy jurisdiction.). This Court has reviewed these cases and concludes, using the rationale of the Fifth Circuit and Judge Mahon in *In re Braniff,* that the Local Rule is valid and constitutional.

## II. *This Adversary Proceeding is not a "Related" Proceeding*

■ On February 22, 1983, CKB moved this Court to determine that the issues tried on January 25 were "related proceedings", as that term is defined under the Local Rule paragraph (d)(3)(A), in which this Court must submit proposed findings of fact and conclusions of law to the United States District Court unless the parties consent to this Court entering a final order. Local Rule ¶ (d)(3)(B).

This Court holds that the matters heard at trial on January 25, 1983 are not related proceedings. Local Rule ¶ (d)(3)(A) provides:

> Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the estate; proceedings to lift the automatic stay; counterclaims by the es-

tate in whatever amount against persons filing claims against the estate; proceedings to set aside preferences and fraudulent conveyances; orders to turn over property of the estate; orders authorizing use of cash collateral; orders approving the sale of property of the estate free and clear of liens; allowances or denial of discharge; proceedings to determine the dischargeability of a debt; proceedings regarding the confirmation of a plan; and similar matters. *A proceeding is not a related proceeding merely because the outcome will be affected by state law.* (emphasis added).

CKB argues that its claims on the lease and inventory issues are "controversies"[2] and private causes of action for breach of contract and sounding in tort, which under *Northern Pipeline* are "related proceedings". Clearly, however, the Local Rule classifies the issues tried as not related proceedings, even if the outcome is affected by state law.

Moreover, *Northern Pipeline* is distinguishable on its facts. In that case the contract in question and the cause of action stemming from it were "both independent of and antecedent to the reorganization petition." *Id.* 102 S.Ct. at 2878. The instant action arises out of the administration of the estate. All the issues tried concerned the lease of the Refinery, which was entered into only upon this Court's order and with this Court's approval. The claims concerning the lease, inventory and turnaround expense are before the bankruptcy court because they are a result of a course of

action approved and supervised by this Court to handle the assets of the debtor. As such, the action is not here merely because one party to the lease or contract has filed a petition in bankruptcy. Moreover, the issues tried are similar to issues traditionally determined by Bankruptcy Courts involving property of the estate.

Therefore, the Court has entered this day its Findings of Fact and Conclusions of Law and final order dispositive of the issues tried.

### III. *The Requests for Jury Trial were Properly Denied*

■ On January 19, 1983, six days before trial, at a pretrial conference the Court orally denied the demand for a jury trial CKB made for the first time that day.[3] This denial was proper because the requests for a jury trial, by CKB on January 19, 1983, and by OKC on January 24, 1983,[4] were not timely made. Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Texas Rule 9001(a); *Fed.R.Civ.P.* 38(b); *Western Geophysical Company of America v. Bolt Associates,* 440 F.2d 765 (2d Cir.1971).

### A. *Demand for a Jury Trial—Procedure*

The instant adversary proceeding was commenced on June 18, 1982 by the Bank's filing of a Complaint, *inter alia,* to Determine Validity, Extent and Priority of Liens. CKB filed an Answer on July 9; OKC filed an Answer on July 20. Neither party requested a jury trial on any issues

---

**2.** Reliance on *In re Cross,* 666 F.2d 873 (5th Cir.1982), to define proceedings as distinguished from controversies under the Local Rule or the Bankruptcy Code is misplaced. 1 *Collier on Bankruptcy* Par. 3.01; *S.Rep.No.* 95–989, 95th Cong. 1st Sess. 153–4, U.S.Code Cong. & Admin.News 1978, p. 5787. In fact, in that opinion the Fifth Circuit terms the procedure for determining a proceeding as versus a controversy a "terminological morass" *citing In re Durensky,* 519 F.2d 1024, 1028 (5th Cir. 1975).

**3.** CKB's demand for a jury trial, made on 1–19–83 in its "Amended Answer and Counterclaim" provides:

> The plaintiff in counterclaim DEMANDS A TRIAL BY JURY of all issues pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, as guaranteed by [the] Seventh Amendment to the Constitution of the United States.

**4.** OKC's "Demand for Jury Trial" filed on 1–24–83 states:

> Now comes OKC Corp. Liquidating Trust (hereinafter "OKC") and respectfully demands a jury trial with regard to the issues contained in the last amended pleading of InterFirst Bank, Dallas, N.A. filed hereinbefore, and with regard to the issues contained in OKC's counterclaim.

relating to the extent, validity or priority of the Bank's alleged lien on the Refinery inventory at that time or within ten days thereafter, *Fed.R.Civ.P.* 38(b). Later, on November 19, 1982, the Bank properly sought and was granted a Motion to Amend its Complaint to set forth its claims relative to the status of the lease after June 30, 1982, and any diminution of inventory at the Refinery. The Bank claimed money damages for unpaid rentals and diminution in the value of the inventory, claims cognizable at law.[5] Again, on November 22, 1982 the Bank sought to amend its First Amended Complaint to add to its prayer for relief claims for punitive damages and attorneys' fees. This Amendment raised no new factual issues but merely different legal theories of recovery. On December 23, 1982 CKB filed its Answer to this Complaint. This untimely answer, *Fed.R.Civ.P.* Rule 15(a), contained no demand for a jury trial and none was subsequently made until January 19. The file discloses no Answer to this First Amended Complaint by OKC and no jury demand by it until January 24.

Numerous pretrial conferences were held throughout 1982 in this matter with no mention of a jury trial. Discovery continued. Then, on January 13, 1983, the Bank moved to file its Second Amended Complaint. Although this Second Amended Complaint varied slightly from the earlier Complaint, namely in paragraphs XXII and XXIV, these variations raised no new fact issues relative to the lease or the diminution in inventory, but rather stated varying theories of recovery. On January 19, 1983, OKC answered the Second Amended Complaint, raised its counterclaim, and demanded a jury trial on all issues. The counterclaim was made by motion of CKB, asserting discovery of an alleged conspiracy by the Bank to defraud the creditors of Basin Refining, directly relating to other issues alleged by the Bank.[6] CKB, in its counterclaim, also alleges that Basin Refining and the Bank converted products at the Refinery. Similarly, OKC filed its Answer and Counterclaim alleging recovery on the basis of the conspiracy theory against the Bank, and for the conduct of the Bank, Basin Refining and its agent, Purvin & Gertz in shutting down the Refinery.

No new issues were introduced by CKB and/or OKC in their January 19, 1983 answers and counterclaims, or by the Bank's Second Amended Complaint. Therefore, the time for requesting a jury on the issues tried expired by the time CKB and OKC made their demands. *Fed.R.Civ.P.* 38(b). Furthermore, this court would not, as a discretionary matter, allow CKB and OKC under the ruse of counterclaims to seek to revive their rights, if any, to a jury trial which they had waived by not timely requesting a jury trial in proper pleadings or on at least three prior occasions when expansive pretrial meetings were held. *Fed. R.Civ.P.* 39(b). When CKB and OKC first injected their demands for a jury trial, some seven months after the action was commenced, the issues of the status of the lease, the diminution in inventory, the turnaround expenses[7] and the priority, validity and extent of the Bank's alleged lien, (an issue subsequently severed *Fed.R.Civ.P.* 42(b)), had been asserted and joined. The subsequent answers and counterclaims merely clarify charges already made creating no new issues.

It is well settled that when the time for requesting a jury trial has run, amendment of a pleading which does not introduce new issues does not revive the right to demand a jury. 5 Moore's Federal Practice ¶ 38.41 (2d

---

**5.** The respective rights of the parties to a jury trial on the issues determined by this Court is discussed in part III.B. *infra.*

**6.** CKB's "amended" or "supplemental" counterclaim presumptively is made pursuant to *Fed.R.Civ.P.* 13(e) or 13(f), allowing a pleader to present a counterclaim which was inadvertently omitted, or which matures after the pleader serves his pleading since no original

counterclaim is made by CKB in the instant adversary No. 382–0622. No timely jury demand to preserve their rights, if any, to a jury trial was raised by CKB or OKC in Adversary No. 382–1027 in which the "original counterclaim" referred to by CKB is filed.

**7.** CKB's application for turnaround expenses was filed on April 26, 1982.

ed. 1982) n. 4 and n. 11 and cases cited therein; *e.g., Trixler Brokerage Co. v. Ralston Purina Co.,* 505 F.2d 1045 (9th Cir. 1974); *Olund v. Swarthout,* 459 F.2d 999 (6th Cir.), *cert. denied,* 409 U.S. 1008, 93 S.Ct. 441, 34 L.Ed.2d 301, *reh'g denied,* 409 U.S. 1119, 93 S.Ct. 899, 34 L.Ed.2d 703 (1972); *Western Geophysical Co. of America v. Bolt Associates,* 440 F.2d 765; *In re Beck,* 22 B.R. 778, 9 B.C.D. (CRR) 753 (Bkrtcy.N.D.Ohio 1982). Therefore, in the instant case, CKB's and OKC's untimely demands for a jury trial were properly denied.

### B. *Right to a Jury Trial*

The Bank contends that CKB and OKC further did not have a right to a jury trial in Bankruptcy Court, traditionally a court of equity. Moreover, the Bank argues that the proper method for determining whether a right to a jury trial exists is to "determine (1) whether under the Bankruptcy Act, the proceeding would have been summary or plenary and then, (2) if plenary, would it have been brought in a State or Federal court and then, (3) would there have been a right to a jury trial under applicable state or federal law." 1 Collier on Bankruptcy ¶ 3.01 p. 3–94 (15th ed. 1982). We cannot agree.

█ As Judge Blinn held, in his well reasoned opinion, the right to a jury trial under 28 U.S.C. § 1480 in Bankruptcy Courts is governed by the nature of the cause of action since by adopting the Bankruptcy Code Congress intended to abolish the cumbersome and time consuming determination of what cases and procedures were summary or plenary. *In re First Financial Group of Texas,* 11 B.R. 67 (Bkrtcy.S.D.Tex.1981); *citing In re Fleming,* 8 B.R. 746 (Bkrtcy.N. D.Ga.1980); *In re Newman,* 14 B.R. 1014, 1015 (Bkrtcy.S.D.N.Y.1981); *Contra In re Portage Associates,* 16 B.R. 445 (Bkrtcy.N. D.Ohio 1982); *In re Fidelity America Financial Corp.,* 20 B.R. 115 (Bkrtcy.E.D.Pa. 1982). Under the Local Rule, paragraph (d)(1)(D), this court may not conduct jury trials since 28 U.S.C. § 1480 is part of § 241(a) of the Bankruptcy Act of 1978 held unconstitutional by *Northern Pipeline.* However, 28 U.S.C. § 1480 may be used to determine whether a party before this Court is entitled to a jury trial.

For all the foregoing reasons this Court has entered orders on these issues.