**William PETERSON, Individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Nicholas NORTON, Commissioner of the Connecticut State Welfare Department, Defendant.**

**Civ. A. No. H 74–232.**

United States District Court,
D. Connecticut.

June 3, 1975.

Walter Marcus and Mary R. Hennessey, Hartford, Conn., for plaintiffs.

Jacob Goldman, Asst. Atty. Gen., State of Connecticut, Hartford, Conn., for defendant.

Before SMITH, Circuit Judge, CLARIE, Chief District Judge, and NEWMAN, District Judge.

## MEMORANDUM OF DECISION

J. JOSEPH SMITH, Circuit Judge:

William Peterson, the acknowledged father of an illegitimate child receiving Aid to Families with Dependent Children (AFDC) [1] benefits, challenges the constitutionality of Connecticut's plan implementing the federal AFDC program insofar as that plan requires him to pay caretaker expenses for his child's mother.[2] Under 42 U.S.C. § 1983, 28 U.S.C. § 1343,[3] the plaintiff

---

1. 42 U.S.C. § 601 et seq.

2. Although the complaint requested relief for Mr. Peterson and the class of persons similarly situated, counsel for plaintiff agreed in court to withdraw this petition for class relief provided that it might be renewed in the event that the state failed to abide by any

affirmative relief which might be granted to the plaintiff.

3. § 1983. Civil action for deprivation of rights

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects,

seeks a declaratory judgment that the Connecticut Welfare Department regulation establishing this requirement [4] violates the Equal Protection Clause of the Fourteenth Amendment, as well as an injunction against the regulation's enforcement. Since the complaint raises a substantial question under the United States Constitution, this three-judge court was appropriately convened. 28 U.S.C. §§ 2281, 2284; [5] *compare* California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). The plaintiff also alleges that this regulation is invalid under the Supremacy Clause, U.S.Const., art. VI, cl. 2, because it is inconsistent with federal statutory law. Although this latter claim would not suffice to activate a three-judge court, Swift & Co. v. Wickham, 382 U.S. 111, 120–22, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Johnson v. Harder, 438 F.2d 7, 13 (2d Cir.

1971), it requires consideration as a ground upon which a three-judge court with an independent jurisdictional basis may grant relief, Solman v. Shapiro, 300 F.Supp. 409 (D.Conn.) (three-judge court), aff'd mem., 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969). For the reasons set forth below, we reject the plaintiff's federal constitutional and statutory attacks on the Connecticut regulation and order judgment entered for the defendant commissioner of state welfare.

### I. Conflict with Federal Statutory Scheme

█ "The validity of the Connecticut regulation depends, first of all, upon its conformity with the federal government's AFDC guidelines. Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). In arguing that a conflict with the federal scheme—specifically, 42 U.

---

or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

§ 1343. Civil rights and elective franchise

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

4. Conn. Handbook of Social Service Policies, Manual Volume I, ch. III, Index No. 345.1 (rev. Apr. 17, 1974). In relevant part, this regulation provides:

The amount of contribution to be made by an absent parent, an adjudged or acknowledged father or a self-supporting husband/wife who lives apart from the

applicant or recipient for reasons involving a break in family relationship is determined as follows:

. . . . .

In those instances where the relative is not liable for all the eligible family members the amount of the expected contribution is determined on a prorata basis of the flat grant, i. e., total number of members in the assistance unit divided into the amount of flat grant and multiplied by the number of eligible persons for whom the legally liable relative is responsible.

NOTE: In establishing the budgetary need of a child the needs of a needy caretaker must be included. . . .

. . . . .

The use of support payments to minor children derived from *court orders* is restricted to the needs of the particular child or children for whom support is paid. There can be no diversion of such support payments to meet the needs of siblings or of the supervising relative who is a needy parent. . . . [emphasis in original.]

5. This regulation of state-wide applicability comes within the terms of 28 U.S.C. § 2281. Alabama Public Service Comm. v. Southern Ry., 341 U.S. 341, 343–44 n. 3, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1941).

S.C. § 606(b) and 45 C.F.R. § 220.48 [6] —exists in this instance, Peterson appears to vacillate between the alternative positions that: (1) the regulation establishes a support obligation of a nature uniformly disallowed by federal law; and (2) the regulation imposes a burden violative of federal law due to its inconsistency with the state statutes from which the regulation derives its authority.

On the one hand, then, the plaintiff contends that the above-cited provisions of the federal AFDC statute and regulations prohibit states from requiring acknowledged fathers of illegitimate children on AFDC to pay all or part of the caretaker mothers' expenses. To establish this proposition Peterson relies heavily on a letter to his attorney from Neil P. Fallon, a regional commissioner of the Department of Health, Education, and Welfare.[7] In the letter, Mr. Fallon points out—and quite correctly, Rodriguez v. Vowell, 472 F.2d 622 (5th Cir.), cert. denied, 412 U.S. 944, 93 S.Ct. 2777, 37 L.Ed.2d 404 (1973)—that under 42 U.S.C. § 406(b) a needy mother of a child on AFDC is awarded benefits pursuant to a determination of her overall needs, not simply as those needs relate to the child's. Since the Connecticut

regulation refers to the caretaker's needs as part of the child's rather than as a matter for separate consideration, the commissioner concludes that the Connecticut Welfare Department may be operating under a "misconception" of the federal requirements. Although Mr. Fallon's opinion may be one which the state, if its understanding of federal law in fact deviates from his, would wish to act upon, it does not bear on the validity of the policy pursued by the Connecticut regulation. Connecticut could act differently but, as the letter recognizes, it need not. Similarly, since 45 C.F.R. § 220.48 addresses only the problem of support for the dependent child, it does not compel adoption of the regulation at issue. Again, the absence of a requirement in federal law that the acknowledged father pay some portion of the unwed mother's expenses does not preclude Connecticut from implementing such a requirement.

The plaintiff's apparent alternative position concedes that federal law allows states to impose the disputed support obligation on acknowledged fathers. In the plaintiff's view, however, Connecticut statutes make no such demand on this class of fathers.[8] The implication, then, is that since the Connecticut regu-

---

6. § 606. Definitions
   When used in this part—

   . . . . .

   (b) The term "aid to families with dependent children" means money payments with respect to, or (if provided in or after the third month before the month in which the recipient makes application for aid) medical care in behalf of or any type of remedial care recognized under State law in behalf of, a dependent child or dependent children, and includes (1) money payments or medical care or any type of remedial care recognized under State law to meet the needs of the relative with whom any dependent child is living

   . . . ..

   § 220.48. Establishing paternity and securing support for children receiving aid (applicable to IV-A).

   (a) There must be a program for establishing paternity for children born out-of-wedlock and for securing financial support for them and for all other children receiv-

ing AFDC who have been deserted by their parents or other legally liable persons. Efforts must be made to locate putative and absent parents and there must be a determination of their potential to provide financial support. There must be provision for the utilization of reciprocal arrangements with other States to obtain or enforce court orders for support. There must be a single staff unit in the State agency and in large local agencies to administer this program. . . .

7. *See* Plaintiff's Exhibit C.

8. We express no opinion on the force of the plaintiff's allegation in the complaint that the regulation under review is invalid for lack of authority in state statutory law—a question which has already been determined adversely to the plaintiff's position by a lower level Connecticut court, Deane v. Norton, CV 18-7407-7034 (Conn. 18th Cir. Dec. 26, 1974) (Dorsey, J.). Moreover, we are persuaded not to abstain until the Connecticut

lation establishing this additional burden therefore contravenes the state's support policy, it does not satisfy the exception in the AFDC program sanctioning imposition of an obligation of this sort. Enforcement of the regulation would therefore violate supreme federal law.

We are not persuaded. Essentially, this reasoning attempts to bootstrap an alleged inconsistency with state law into a Supremacy Clause violation. Assuming *arguendo* that the regulation does violate Connecticut's support laws, we fail to see how the implementation of a policy which the federal AFDC scheme recognizes as not in conflict with its purposes can be said to deny that the federal law is "the supreme Law of the Land," U.S.Const. art. VI, cl. 2. *Cf.* Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); Parker v. Brown, 317 U.S. 341, 354-56, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

The challenged Connecticut law is consistent with the federal AFDC statute and its accompanying regulations.

## II. Denial of Equal Protection

In contending that the Connecticut regulation denies him the equal protection of the laws, Peterson proceeds on two independent theories. First, by spreading the acknowledged father's child support over the needs of both the illegitimate child on AFDC and the unwed caretaker mother and not allocating any part of child support for a legitimate child on AFDC to the divorced or separated wife with custody, the regulation unjustifiably treats acknowledged illegitimate children receiving AFDC benefits worse than legitimate children on AFDC. Secondly, by requiring acknowledged fathers of illegitimate children on AFDC to contribute to the unwed caretaker mother's support and not demanding the same of fathers of illegitimate children not on AFDC, the regulation unlawfully discriminates against fathers of the former variety.

The first theory depends upon a distinction formal in the extreme. When the welfare department seeks to obtain payment from an acknowledged father of an illegitimate child or the father of a legitimate child, pursuant to Conn. Gen.Stat.Ann. § 17–82e, part of the payment goes to satisfy the mother's "caretaker expenses." This same result occurs when the father's obligation to the department is enforced by court order pursuant to Conn.Gen.Stat.Ann. § 17–324. However, when the father of a legitimate child is obligated by court order to furnish support to his child in connection with a divorce or separation, pursuant to Conn.Gen.Stat.Ann. § 46–42, the regulation challenged in this case provides that such support payments cannot be used to meet the mother's needs. The bar against such diversion to the mother is simply a reflection of the fact that her need is dealt with under the different rubric of alimony. Inevitably, the court's determination of the proper amount to be paid for the child's support in such situations is somewhat limited by the amount determined to be appropriate for alimony. Support payments received by legitimate children pursuant to court orders entered in divorce or separation proceedings are thus limited by an amount deemed appropriate for the children's caretaker in substantially the same way as support payments for all children, both legitimate and illegitimate, are limited when the department enforces the father's obligation and includes "caretaker expenses" in the determination of the child's needs. The two classes of children are thus treated similarly or, in the language of

Supreme Court has ruled on this state law claim. Relevant to our decision are *Deane's* indication that state court review may well not obviate constitutional adjudication, the unfairness to the parties of further delay, and the facility with which we may decide the federal claims presented. *Cf.* Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Doud v. Hodge, 350 U.S. 485, 76 S.Ct. 491, 100 L.Ed. 577 (1956).

the Fourteenth Amendment, protected equally.[9]

The plaintiff's second theory, which focuses on the regulation's distinction between acknowledged fathers of illegitimate children on AFDC and acknowledged fathers of illegitimate children not on AFDC, invokes recent Supreme Court decisions intimating strongly that classifications on the basis of legitimacy of birth are, like racial and select other classifications,[10] constitutionally suspect. *See,* Gomez v. Perez, 409 U.S. 535, 93 S. Ct. 872, 35 L.Ed.2d 56 (1973) (per curiam); Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); Glona v. American Guar. & Liab. Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L. Ed.2d 436 (1968). *But see,* Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971). Peterson's reliance on this line of authority is misplaced, however, for it mischaracterizes the nature of the classification at issue: The regulation's discrimination between the two classes of fathers is not made on the basis of their children's legitimacy of birth but instead on the basis of the children's AFDC recipiency. The instant situation, then, is not at all comparable to that present in Glona v. American Guar. & Liab. Ins. Co., *supra,* where the Court found that the parent of an illegitimate child was denied equal protec-

tion by the state's limitation of wrongful death benefits to parents of deceased legitimate children. Even assuming, then, that legitimacy classifications are suspect, the Connecticut regulation under review does not qualify for the demanding review for virtual perfection in classification reserved for suspect classifications.[11]

The applicable standard of review instead requires only that the classification chosen bear a rational relationship to permissible state goals. *See,* McDonald v. Bd. of Election, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911). And in this regard, the regulation is easily justified in terms of the best interests of the child: The dependent child's well-being is inextricably linked to the caretaker mother's ability to attend to and care for the child, which in turn depends upon the extent to which provision is made for her needs. Since the regulation is aimed at alleviating the plight of needy children, it is not at all unreasonable for it to require only acknowledged fathers of illegitimate children on AFDC to pay caretaker expenses for the unwed mother. The classification among acknowledged fathers of illegitimate children on the basis of their children's AFDC recipiency is eminently well-tailored to children's best interests.[12]

---

9. Although we reach the merits of this equal protection claim, we note, without deciding, that the plaintiff, who is suing in his own right as an acknowledged father, may lack standing in this declaratory judgment action to raise this claim in his child's behalf. *Compare,* Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943) (per curiam) *with* Eisenstadt v. Baird, 405 U.S. 438, 443 & n. 4, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) *and* Griswold v. Connecticut, 381 U. S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

10. The Supreme Court has explicitly held that the following classifications are suspect: alienage, Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); race, Bolling v. Sharpe, 347 U.S.

497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); and nationality, Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943).

11. On the nature of judicial review of suspect classifications, see Note, Mental Illness: A Suspect Classification?, 83 Yale L.J. 1237, 1251-52 (1974).

12. The rational relation standard may have become a more formidable check on the classification process in recent years. *Compare,* Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) *with* Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). *But cf.* Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), rev'g, 476 F.2d

The Connecticut welfare regulation comports with the requirements of the federal AFDC program and the Equal Protection Clause of the Fourteenth Amendment. The plaintiff's request for declaratory and injunctive relief is therefore denied.

The foregoing may serve as the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

Judgment to enter for defendant in accordance with this opinion.

806 (2d Cir. 1973). In any event, however, the Connecticut regulation survives the most skeptical review for rationality arguably authorized by modern precedent.