**In re Q1 CORPORATION, Debtor.**

**Q1 CORPORATION, Plaintiff,**

v.

**Victor REICHENSTEIN, Defendant.**

No. CV–83–0525.
Bankruptcy No. 882–82498.
Adv. No. 882–0823–18.

United States District Court,
E.D. New York.

March 22, 1983.

Schwartz, Sachs & Kamhi, P.C. by Gary B. Sachs, Carle Place, N.Y., for plaintiff.

Zalkin, Rodin & Goodman by Andrew D. Gottfried, New York City, for defendant.

ALTIMARI, District Judge:

On October 1, 1982, plaintiff, Q1 Corporation (Q1), filed a Chapter 11 petition for reorganization in the Bankruptcy Court for the Eastern District of New York. Subsequently, on November 30, 1982, Q1 commenced also in Bankruptcy Court the instant adversary proceeding against defendant, Victor Reichenstein, alleging that defendant agreed to finance the aforementioned reorganization. In essence, the adversary proceeding presents a traditional state law breach of contract claim.

On January 24, 1983, defendant moved before Bankruptcy Court Judge C. Albert Parente for an order dismissing the complaint in the adversary proceeding on the ground that the Bankruptcy Court lacked subject matter jurisdiction. By Order dated February 8, 1983 Judge Parente held that the adversary proceeding constituted a related proceeding over which the Bankruptcy Court lacked subject matter jurisdiction pursuant to Section (d)(3) of the Emergency Bankruptcy Resolution adopted by the Eastern District. *See, In Re Jurisdiction of Bankruptcy Courts,* (E.D.N.Y. December 21, 1982) (hereinafter referred to as the "emergency rule"). Judge Parente, therefore, transferred the instant motion to the District Court and ultimately to the undersigned.

Defendant now contends that the emergency rule adopted by the Eastern District of New York, at the direction of the Judicial Council of the Second Circuit, is without authority of statute and, therefore, invalid. More specifically, defendant argues that even if authority exists for passage of such a rule: (1) the emergency rule as applied to this adversary proceeding is unconstitutional in light of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); and (2) that the District Court is without jurisdiction with respect to suits commenced by Chapter 11 debtors against third parties. In other words, defendant contends that neither the Bankruptcy nor the District Court has subject matter jurisdiction with respect to this matter.

## BACKGROUND

On June 28, 1982 the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) found that "§ 241(a) of the Bankruptcy Act of 1978 [the "Act"] has impermissibly removed most, if not all, of the essential attributes of the judicial power from the Art. III District Court, and has vested those attributes in a non-Art. III adjunct." *Id.* at ——, 102 S.Ct. at 2879–880. Thus, the court held that "the broad grant of jurisdiction to the Bankruptcy Courts contained in

§ 241(a) is unconstitutional." *Id.* at ——, 102 S.Ct. at 2880. Further, the court held that its decision was to apply only prospectively and, "to afford Congress an opportunity to reconstitute the Bankruptcy Courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws", *Id.,* the Supreme Court stayed its judgment until October 4, 1982. When Congress failed to act prior to expiration of the initial stay, the Supreme Court extended its stay of judgment until December 24, 1982. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 103 S.Ct. 199–200, 74 L.Ed.2d 160 (1982). The Supreme Court refused to extend the stay past December 24, 1982. *See,* 51 U.S.L.W. 2382.

In the meanwhile, the Judicial Conference of the United States, obviously in anticipation of the worst, on September 23, 1982 adopted the following resolution:

"That the conference request the Director [of the Administrative Office of the United States Court, William E. Foley] to provide each circuit with a proposed rule to take effect October 5, 1982 in the absence of congressional action or extension of the stay, which rule will permit, the bankruptcy system to continue without disruption in reliance upon jurisdictional grants remaining in the law as limited by *Northern Pipeline Co. v. Marathon Pipe Line Co. et al.*"

Memorandum from Administrative Office of the United States Courts (December 3, 1982) (Continued Operation of the Bankruptcy Court System after December 24, 1982, in the Absence of Congressional Action).

Acting pursuant to the above resolution and "authority vested in the Judicial Council by 28 U.S.C. § 332(d)," on October 4, 1982 the Judicial Council of the Second Circuit adopted a version of the Bankruptcy Emergency Rule and, by Memorandum dated October 21, 1982, recommended that each District Court in the Second Circuit adopt the proposed rule. By Order dated December 21, 1982, and effective as of De-cember 25, 1982 the United States District Court for the Eastern District of New York adopted the rule for the purpose of:

"supplement[ing] existing law and rules in respect to the authority of the bankruptcy judges of this district to act in bankruptcy cases and proceedings until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982), or until March 31, 1984, whichever first occurs."

*In re Jurisdiction of Bankruptcy Courts,* at 1 (E.D.N.Y. December 21, 1982).

The emergency rule seeks to cure the defects in the Act that led the Supreme Court to find it unconstitutional. The rule has been uniformly adopted by District Courts throughout the Circuits.

DOES THE BANKRUPTCY COURT RE-TAIN SUBJECT MATTER JURIS-DICTION OF THIS ACTION UNDER THE HOLDING OF *NORTHERN PIPELINE.*

In *Northern Pipeline,* the court held that "our decision today shall apply only prospectively." —— U.S. at ——, 102 S.Ct. at 2880. Immediately thereafter, the court stayed its judgment until October 4, 1982, which stay was later continued to December 24, 1982. Thus, the court's holding on retroactivity is applicable to the period between June 28, 1982, and December 24, 1982. *See United States v. Security Industrial Bank,* —— U.S. ——, 103 S.Ct. 407, 410 n. 5, 74 L.Ed.2d 235 (1982).

In the instant case, plaintiff commenced the adversary proceeding against defendant on November 30, 1982, that is, during the period the Supreme Court's stay of *Northern Pipeline* continued. As such, we must initially address the court's holding on retroactivity. Did the court, by its holding, intend that its decision in *Northern Pipeline* would apply only to cases filed in Bankruptcy Court subsequent to the date of its decision of *Northern Pipeline,* June 28, 1982 (by reason of its stay, December 24, 1982). Or,

did it merely intend that its decision would not affect orders and judgments of Bankruptcy Courts, entered pursuant to the Act's jurisdictional grant, which had become final and were entered prior to June 28, 1982 (by reason of the stay, December 24, 1982).

If the former, we need go no further except to say that the Bankruptcy Courts continue to exercise jurisdiction under the Act as to all civil proceedings arising under title 11 or arising in or related to cases under title 11, filed prior to December 24, 1982, of which this proceeding is one. Under such an analysis, we would not reach the question of this court's jurisdiction over bankruptcy matters or of the constitutionality of the emergency rule as applied to this proceeding. Such an analysis, however, is clearly incorrect. *See, e.g., Gillman v. Preston Family Investment Co. and First Interstate Bank of Utah (In Re Richardson)*, 27 B.R. 407 at 410 (Bkrtcy.D.Utah 1983); *Still v. First Bank of Newton (In Re Jorges Carpet Mills, Inc.)*, 27 B.R. 333 at 335 (Bkrtcy.E.D.Tenn.1983); *Cf., Walter E. Heller and Co. v. Matlock Trailer Corp.*, 27 B.R. 311 (Bkrtcy.M.D.Tenn.1983).

First, reference to the *Northern Pipeline* decision and the language used therein, clearly evinces no intent to permit bankruptcy courts to exercise Section 241(a) jurisdiction after June 28 (December 24).

The Supreme Court unambiguously stated that "[h]aving concluded that the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) is unconstitutional, we must now determine whether our holding *should be applied retroactively to the effective date of the act."* —— U.S. at ——, 102 S.Ct. at 2880. (Emphasis added.) Continuing, the court concluded that its decision would apply only prospectively, citing three of its prior decisions on retroactivity.

The court first pointed to its decision in *Buckley v. Valeo,* 424 U.S. 1, 142, 96 S.Ct.

612, 692, 46 L.Ed.2d 659 (1975), wherein it held parts of the Federal Election Campaign Act of 1971, as amended in 1974, constitutionally infirm, and that most of the powers conferred by the Act upon the Federal Election Commission could be exercised only by "Officers of the United States" appointed pursuant to Art. II, § 2, cl. 2 of the Constitution.

The relevant part of the *Buckley* decision appears at page 142, 96 S.Ct. at 692. There, the court stated that:

"It is also our view that the Commission's inability to exercise certain powers because of the method by which its members have been selected should not affect the *validity of the Commission's administrative actions and determinations to this date,* including its administration of those provisions, upheld today, authorizing public financing of federal elections. *The past acts of the Commission are therefore accorded de facto validity,* just as we have recognized should be the case with respect to legislative acts performed by legislators held to have been elected in accordance with an unconstitutional apportionment plan."

*Id.* at 142, 96 S.Ct. at 692 (1975).

Thus, it appears clear to the court that *Buckley* stands as authority for the proposition that past acts and determinations of bankruptcy judges entered pursuant to authority conferred by Section 241(a) of the Act are valid. It is equally clear that it does not support the argument that bankruptcy judges continued to possess jurisdiction under Section 241(a) to act in bankruptcy matters after December 24, 1982.[1]

The court concludes, therefore, that beginning on December 25, 1982 the bankruptcy courts ceased to have jurisdiction, under Section 241(a) of the Act, over bankruptcy matters.

---

1. Similarly, the other two decisions cited by the Supreme Court, *Chicot County Drainage Dist. v. Bank,* 308 U.S. 371, 376–77, 60 S.Ct. 317, 319–20, 84 L.Ed. 329 (1940) and *Insurance Corp. v. Compagnie des Bauxites,* 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 2104 n. 9, 72 L. Ed.2d 492 (1982), lend support only to the conclusion that the Supreme Court intended to legitimize final orders and judgments of bankruptcy courts entered prior to December 24, 1982.

## DISTRICT COURT JURISDICTION OVER BANKRUPTCY CASES

It is impossible to intelligently pass on the question of our jurisdiction over bankruptcy cases without first reviewing the Act and the Supreme Court's holding in *Northern Pipeline.*

Referred to as the Bankruptcy Reform Act of 1978, the new bankruptcy legislation was signed by the President on November 6, 1978. Pub.L. No. 95–598, 92 Stat. 2549. The Act is composed of four titles. Title I codifies and enacts Title 11 of the United States Code containing the substantive and part of the procedural law of bankruptcy. Title II consists of amendments to Title 28 of the United States Code and the Federal Rules of Evidence. Title III contains amendments of statutes affecting the administration of bankruptcy, and Title IV contains provisions governing the operation of the court system, including jurisdiction.

The act vested in the newly created bankruptcy courts jurisdiction far broader than that previously existing under the old bankruptcy act. The bankruptcy courts were given jurisdiction to hear "any matter which is related to or in any way connected with [a] title 11 case." 1 *Collier on Bankruptcy,* Par. 3.01, at 3–47 (15th ed. 1982). The distinction between "summary" and "plenary" jurisdiction was eliminated.

Section 241(a) of the Act, 28 U.S.C. §§ 1471–1482, contains the relevant jurisdictional grant. Section 1471 provides in pertinent part that:

"(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district court shall have original but not exclusive jurisdiction of all court proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The Bankruptcy Court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts."

Section 402(b) of the Act, however, provides that the amendments made by title II of the Act, except as otherwise provided, shall take effect on April 1, 1984. Bankruptcy Reform Act of 1978, § 402(b), 92 Stat. 2682 (published as a note preceding 11 U.S.C. § 101). Section 241(a) is located within title II and, since not otherwise provided for, has as its effective date April 1, 1984.

During the transition period from October 1, 1979 through March 31, 1984, the "courts of bankruptcy", which under Section 2(a) of the Bankruptcy Act of 1898 are the United States District Courts, continue as separate departments of the respective district courts. Bankruptcy Reform Act of 1978, § 404(a), 92 Stat. 2683 (published as a note preceding 28 U.S.C. § 151). During the transition period, the continued courts of bankruptcy are empowered to exercise the grant of jurisdiction and powers contained in Section 241(a) of the Act. Bankruptcy Reform Act of 1978, § 405(b), 92 Stat. 2685, (published as a note preceding 28 U.S.C. § 1471).

Thus, at least until March 31, 1984, this court, as a court of bankruptcy, pursuant to Section 405(b) of the Act, may exercise the jurisdictional grant contained in 28 U.S.C. Section 1471(a) and (b), to the extent that such grant is unaffected by the decision in *Northern Pipeline.*

■ In *Northern Pipeline,* the Supreme Court held that "[t]he broad grant of jurisdiction to the bankruptcy courts contained in Section 241(a) is unconstitutional. . . ." —— U.S. at ——, 102 S.Ct. at 2880. In a somewhat confusing footnote, however, the court added that:

"It is clear that, at the least, the new bankruptcy judges cannot constitutionally be vested with jurisdiction to decide this state-law contract claim against Marathon. As part of a comprehensive restructuring of the bankruptcy laws, Congress has vested jurisdiction over this and all matters related to cases under title 11

in a single non-Art. III court, and has done so pursuant to a single statutory grant of jurisdiction. In these circumstances we cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encompass this and similar claims, it would simply remove the jurisdiction of the bankruptcy court over these matters, leaving the jurisdictional provision and adjudicatory structure intact with respect to other types of claims, and thus subject to Art. III constitutional challenge on a claim-by-claim basis. Indeed, we note that one of the express purposes of the Act was to ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes. See H.R.Rep. No. 95–595, supra, pp. 43–48; S.Rep. No. 95–989, p. 17 (1978). Nor can we assume, as THE CHIEF JUSTICE suggests, post, at 2, that Congress' choice would be to have this case routed to the United States district court of which the bankruptcy court is an adjunct.' We think that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III, in the way that will best effectuate the legislative purpose."

*Id.* This footnote has engendered much confusion as to the scope of the Supreme Court's opinion.

It has been suggested that the Supreme Court in finding the grant of jurisdiction to bankruptcy courts in Section 241(a) unconstitutional, intended by the above footnote to hold that the unconstitutional grant of jurisdiction to bankruptcy courts in Section 241(a) was non-severable from the otherwise unaffected grant of jurisdiction to the district court thereunder. Therefore, the argument follows, *Northern Pipeline* invalidated 28 U.S.C. Section 1471 *in toto*, creating a jurisdictional lapse with regard to bankruptcy cases. *See, e.g., Color Craft Press, Ltd. v. Nationwide Shopper Systems, Inc. (In Re Color Craft Press, Ltd.),* 27 B.R. 392 (Bkrtcy.D.Utah 1983); *C. Kenneth Still v. First Bank of Newton (In Re Jorges*

*Carpet Mills, Inc.),* 27 B.R. 333 (Bkrtcy.E.D. Tenn. January 31, 1983); *In Re Conley,* 26 B.R. 885 (Bkrtcy.M.D.Tenn.1983); *In Re Motion to Dismiss: constitutionality of jurisdiction of the Bankruptcy Court,* 23 B.R. 334 (Bkrtcy.N.D.Ga.1982); *see also, Statement of National Bankruptcy Conference In Opposition to Proposed Conference Rule* (1982).

The court finds the above argument untenable. At no point did the Supreme Court indicate that by its holding it intended to invalidate the grant of bankruptcy jurisdiction to district courts. Such an interpretation extends the holding in *Northern Pipeline* to an illogical extreme.

As to the aforementioned footnote, its meaning is clarified by Justices Rehnquist and O'Connor in a concurring opinion. The Justices stated that they agreed with the plurality that the grant of authority to bankruptcy courts found unconstitutional was *"not readily severable from the remaining grant of authority to bankruptcy courts under* § 241(a)." —— U.S. at ——, 102 S.Ct. at 2882. (Emphasis added.) Clearly, therefore, the only grant of jurisdiction found non-severable by the court in *Northern Pipeline* was the grant of authority to bankruptcy courts. Section 1471(a) and (b) was unaffected.

It has been suggested that subsections (a) and (b) of 28 U.S.C. § 1471 were not intended to confer jurisdiction on the district court to hear bankruptcy matters, but were intended only to ensure the constitutionality of the grant of expansive jurisdiction to bankruptcy courts by making them adjuncts of the district court. *Color Craft Press, Ltd. v. Nationwide Shopper Systems (In re Color Craft Press, Ltd.),* 27 B.R. 392 at 395–96 (Bkrtcy.D.Utah 1983); *Chamberlain Livestock Auction, Inc. v. Aberdeen Production Credit Association,* 22 B.R. 750 (D.C.S.D.1982).

While the court recognizes this argument, we find the language of Section 1471(a) and (b) clear and, moreover, that Congress' overriding intent was to provide a forum

for the adjudication of bankruptcy matters.[2]

Having found that jurisdiction exists pursuant to 28 U.S.C. Section 1471(a) and (b), the court does not pass on the question of whether 28 U.S.C. Section 1334 provides an alternative basis for district court jurisdiction in this case. See I.J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* par. 0.62[3], at 677 (2d ed. 1982); C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure* § 3570, at 471 (1975).

The court concludes, therefore, that, at least until March 31, 1984, we possess jurisdiction over bankruptcy matters.

## THE EMERGENCY BANKRUPTCY RULE

Having concluded that this Court has jurisdiction over bankruptcy matters, including related proceedings, pursuant to Sections 404 and 405 of the Act and 28 U.S.C. Section 1471(a) and (b), we now turn our attention to the validity of the emergency rule as applied to the instant proceeding. Defendant argues that the rule is without statutory authority and that the district court may not establish, by local rule, jurisdiction for the bankruptcy court.

Defendant misstates the issues. The questions posed are: (1) whether the district court properly enacted the emergency rule; and (2) whether the rule, as applied to this case, is valid.

As we view it, defendant, in effect, challenges the manner in which the district court has chosen to exercise its jurisdiction over bankruptcy cases and proceedings.[3]

▇ The emergency rule was adopted by the Judicial Council of the Second Circuit and recommended to each district court within the circuit, pursuant to the council's authority under 28 U.S.C. Section 332(d). Section 332, Judicial Council of Circuits, was first enacted in 1939, 53 Stat. 1223, and recently amended. The Judicial Council of the Second Circuit relied on subsection (d) in adopting the emergency rule and recommending that the District Courts follow suit.[4] Section 332, subsection (d) provides in pertinent part that:

"(d)(1) Each judicial council shall make all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit . . . ."

(2) All judicial officers and employees of the circuit shall promptly carry into effect all orders of the judicial council.

(3) Unless an impediment to the administration of justice is involved, regular business of the courts need not be referred to the council."

---

2. At the minimum, the vesting of jurisdiction in the District Courts, as courts of bankruptcy, during the transition period and the continuation of 28 U.S.C. Section 1334 during that same time, is clear evidence of Congress' intent that District Courts would exercise bankruptcy jurisdiction at least until March 31, 1984.

3. Defendant challenges a statement made by the Director of the Administrative Office of the United States Courts in transmitting the proposed emergency rule to the various judicial circuits that the authority for adoption of the proposed rule is found in Section 105 of the Act, 11 U.S.C. § 105. The court finds that Section 105 supports adoption of the emergency rule. See, e.g., *Walter E. Heller and Company Southeast, Inc. v. Matlock Trailer Corp. (In re: Matlock Trailer Corp.)*, 27 B.R. 311 at 327 n. 14 (Bkrtcy.M.D.Tenn.1983); *Braniff Airways, Inc. v. Civil Aeronautics Board; In re: Braniff Airways, Inc.*, 27 B.R. 231 at 233 (D.C. N.D.Texas 1983), aff'd 700 F.2d 214 (5th Cir. 1983); *The Prudential Insurance Company of America v. The Stouffer Corp. (In re: North-*

*land Point Partners)*, 26 B.R. 860 at 861 (D.C.E. D.Mich., 1983).

4. Section 332(d) addresses itself to orders of the judicial council, stating that all judicial officers of the circuit shall carry such orders into effect.

The October 21, 1982 memorandum of the Judicial Council of the Second Circuit, while not formally titled an Order and while recommending that each district adopt the emergency rule, clearly states that the "uniform effective and expeditious administration of justice within this circuit *requires* that the attached rule for the administration of the bankruptcy system in this circuit be adopted by the district courts of this circuit. . . ."

Thus, the word recommend must be read as modified by the word requires. In this light, and in view of the Judicial Council's specific reliance on Section 332, the court believes that the October 21st directive was in substance, though not in form, an Order of the Judicial Council.

As might be expected, there is a dearth of case law with regard to the power of judicial councils under Section 332.

It has been said that the major purpose for enactment of Section 332 was "to free the federal courts from their previous reliance on the Justice Department in budgetary matters, and to 'furnish to the federal courts the administrative machinery for self improvement, through which those courts will be able to scrutinize their own work and develop efficiency and promptness in their administration of justice'" *Chandler v. Judicial Council of the Tenth Circuit,* 398 U.S. 74, 96, 90 S.Ct. 1648, 1659, 26 L.Ed.2d 100 (1969) (Harlan, J., concurring), *citing* H.R.Rep. No. 702, 76th Cong., 1st Sess. 2 (1939).

It is clear that this grant of power to the council is constitutional, since "it cannot be unconstitutional to authorize the courts to manage their own business." *In Re Imperial "400" National, Inc.,* 481 F.2d 41, 45 (3d Cir.) *cert. denied,* 414 U.S. 880, 94 S.Ct. 68, 38 L.Ed.2d 125 (1973), *reh'g denied* 486 F.2d 297 (3d Cir.1973). Moreover, while the statute has been recognized to be far from "a model of clarity in terms of the scope of a judicial councils' powers," *Chandler v. Judicial Council of the Tenth Circuit,* 398 U.S. at 85 n. 6, 90 S.Ct. at 1654 n. 6, the phrase "effective and expeditious administration of the business of the courts" is to be broadly construed. *In Re Imperial "400" National, Inc.,* 481 F.2d at 45. Indeed, this view has been adopted by two present Justices of the Supreme Court. *See* Brennan, *The Continuing Education of the Judiciary in Improved Procedures,* 28 F.R.D. 42, 43 (1962) ("Here, indeed was a broad authority and a significant responsibility. No longer in matters of administration was the federal system . . . to be a 'go as you please system in which each judge paddled his own canoe.'") Burger, *The Courts on Trial,* 22 F.R.D. 71, 75 (1958) ("This statute vests primary power, and therefore full responsibility, in the Circuit Judges for the management of the federal judicial system.")

It has been further stated that a judicial council, sitting as an administrative body,

can, short of exercising traditional judicial functions, enact rules and resolutions applicable to the courts within its circuit. *In Re Imperial "400" National, Inc.,* 481 F.2d at 46; *see United States ex rel. Frizer v. McMann,* 437 F.2d 1312, 1317 (2d Cir.1971) (Judicial Council of the Second Circuit adopted standards in regard to the prompt disposition of criminal cases for the district courts of the circuit in the exercise of its supervisory power over the administration of criminal justice in the circuit); *See, generally* Comment, *The Authority of the Circuit Judicial Councils; Separation of Powers in the Courts of Appeals,* 5 Seton Hall L.Rev. 815, 860 (1974) ("General council orders, dealing with housekeeping matters or promulgating rules of procedure, are simply a means of unifying the administrative activities within the circuit.")

The Judicial Council of the Second Circuit, in requiring adoption of the emergency rule, did not exercise traditional judicial functions. It merely enacted an administrative rule applicable to the courts within this circuit. The rule assures the effective and expeditious administration of justice within this circuit by providing a specialized forum for the adjudication of bankruptcy matters. Indeed, as one district court has noted with regard to the Judicial Council of the Sixth Circuit: "It is clear that the council's obligation to assure the 'effective and expeditious administration of justice within this circuit' would have been ill-served if there had been no response to the Supreme Court's refusal to extend the stay in *Marathon." The Prudential Insurance Co. of America v. The Stouffer Corp. (In re: Northland Point Partners),* 26 B.R. 1019 at 1021 (D.C.E.D.Mich.1983).

Once enacted, the United States District Court for the Eastern District of New York complied with Section 332(d)(2) when it adopted the emergency rule. Thus, the court finds that the district court properly enacted the emergency rule.

In addition, further authority for promulgation of the local emergency rule by the Eastern District of New York exists under 11 U.S.C. Section 105 (see p. 653 n. 2

supra) which provides that the "bankruptcy court may issue any order . . . necessary or appropriate to carry out the provisions of this title." *See,* 28 U.S.C. § 2071 ("[C]ourts . . . may . . . prescribe rules for the conduct of their business."); Fed.R.Civ.P. 83 ("Each district court . . . may from time to time make and amend rules governing its practice. . . ."); *see, also,* Bankruptcy Rule 927.

More importantly, the emergency rule, *as applied to the instant proceeding,* is indeed constitutional under the decision in *Northern Pipeline.*

The Supreme Court in *Northern Pipeline* found Section 241(a) of the Act unconstitutional because it impermissibly removed "the essential attributes of the judicial power" from the district court and vested those attributes in the non-Article III adjunct bankruptcy courts. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. at ——, 102 S.Ct. at 2879–880.

 In the instant proceeding, the essential attributes of judicial power with regard to the proper adjudication of the issues of law presented, reside with this Court and not the Bankruptcy Court. As a related proceeding, the bankruptcy judge may not enter a judgment or dispositive order in this action. He may only submit findings, conclusions, and a proposed judgment or Order to the district judge. Moreover, the district court must review any proposed judgment or Order whether or not any notice of appeal or application for leave to appeal has been filed. *Id.,* § (3)(2)(A)(iii). Thus, the rule satisfies the judicial power concerns raised by the plurality in *Northern Pipeline.*

As applied to the instant related proceeding, the district court has not by local rule established jurisdiction for the bankruptcy court. Instead, it has by necessity, and pursuant to its jurisdiction over bankruptcy matters, provided that the bankruptcy court shall serve as a "referee" (that is, one to whom a matter is "referred") with regard to related proceedings. The bankruptcy court is without the essential attributes of judicial power.

Thus, the Court today holds only that the emergency rule as applied to the instant related proceeding is valid.[5]

## CONCLUSION

For the reasons heretofore stated, defendant's motion to withdraw reference of this proceeding from the United States Bankruptcy Court for the Eastern District of New York is granted. This proceeding shall remain as civil docket # CV–83–0525 in the District Court for the Eastern District of New York assigned to this court.

Defendant's motion for an Order pursuant to Rule 12(b), Federal Rules of Civil Procedure, dismissing the complaint for lack of subject matter jurisdiction is denied.

Pursuant to Emergency Rule, Section (c)(2), the court refers this proceeding to Bankruptcy Judge C. Albert Parente. In accordance with Section (d)(3) of the Emergency Rule, Judge Parente shall:

1. Schedule the completion of discovery.

2. Set dates for filing of the pretrial Order, pretrial conference, jury selection and trial, if needed.

3. Consider the possibility, if any, of settlement and to assist therewith as may be appropriate.

4. Hold a pretrial conference, sign the pretrial Order, and then enter an Order placing the case on the court's trial calendar and returning the case to the undersigned for trial.

5. Assist the parties in such additional ways, not inconsistent with the Emergency Bankruptcy Rule, as may serve the interests of justice and the prompt and orderly disposition of the action.

6. Hear pretrial motions and submit proposed findings of fact, proposed conclusions

---

**5.** A court will not "anticipate a question of constitutional law in advance of the necessity of deciding it" or "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

of law and a proposed judgment or Order to the Court. The Court's review shall be as provided for in Section (e) of the Emergency Rule.

He shall enter no final judgments or dispositive Orders.

SO ORDERED.