**In re Lawrence ESPOSITO, Jr., Debtor.**

**In re Richard A. MARRO, Debtor.**

**Lawrence ESPOSITO, Jr., Plaintiff,**

v.

**STATE OF CONNECTICUT, Defendant.**

**Richard A. MARRO, Plaintiff,**

v.

**COMMISSIONER OF INCOME MAINTENANCE, Defendant.**

**Bankruptcy Nos. 5–81–00834, 5–81–01040. Adv. Nos. 5–81–0120, 5–81–0454.**

United States Bankruptcy Court, D. Connecticut.

July 20, 1983.

Wilbur Ward Dinegar, Asst. Atty. Gen., Hartford, Conn., for defendants.

## MEMORANDUM AND DECISION
ALAN H.W. SHIFF, Bankruptcy Judge.

### I.

### BACKGROUND

These matters were reached for trial on the complaints filed by debtors, Richard A. Marro (Marro) and Lawrence Esposito, Jr. (Esposito), to determine the dischargeability of a debt each owes to the State of Connecticut, arising out of child support obligations assigned to the State under the Aid To Families With Dependent Children Program (AFDC). In each proceeding, the evidence consisted of a stipulation entered into between the parties which follows.

### A.

*Marro*

1. Plaintiff's wife, Delores Marro, and plaintiff's one minor child have been recipients of public assistance from the defendant under the Aid To Families With Dependent Children program (Title IV–D, Social Security Act, as amended) for various periods from August 1, 1976 to June 30, 1981.

2. The plaintiff himself was a member of this family unit receiving said public assistance during substantial portions of these time periods, the exact dates of which have not yet been agreed upon by the parties.

3. On June 22, 1976, May 30, 1979 and September 28, 1979, plaintiff's wife executed documents for the defendant entitled "Assignment of Rights to Support, Pursuant to Title IV of the Social Security Act as Amended." Copies of these documents have been filed by the defendant and are also attached hereto.

4. On or about September 12, 1978, the plaintiff executed a document for the defendant entitled "Voluntary Support Agreement" calling for support payments to be made for the benefit of plaintiff's family. This document was filed with the Superior Court. Defendant main-

Francis X. Dineen, New Haven, Conn., for plaintiffs.

tains that this Agreement when filed with the Superior Court becomes, pursuant to state law, an order of the court.

5. On September 29, 1981, the plaintiff filed his petition for relief in the Bankruptcy Court, pursuant to Title 11 of the United States Code.

6. Included in the list of unsecured creditors set forth in Schedule A–3 of plaintiff's schedule in bankruptcy was the defendant, Commissioner of Income Maintenance. See paragraph 3 of the complaint which is admitted.

7. The amount owing by the plaintiff to the defendant pursuant to the Voluntary Support Agreement and the resultant order of the court, referred to in paragraph 4 above, was $9,827.23 on the date of the petition.

8. The total amount of public assistance paid, which the defendant claims is subject to reimbursement under Federal and/or State law, up to the date of the petition, amounts to $11,325.79 (crediting any repayments made).

9. The monthly assistance awards paid by the defendant, State of Connecticut, are set forth in the "Statement of Assistance" provided by the defendant in its reply to the request for interrogatories.

10. On January 28, 1982 the plaintiff received his discharge in bankruptcy in this Chapter 7 bankruptcy case.

11. On or about December 8, 1981, the plaintiff brought this adversary proceeding seeking, among other relief, a determination of dischargeability of his indebtedness to the defendant.

12. No separation agreement, divorce decree or property settlement agreement exists between the plaintiff and his wife, Leona Esposito, [sic, should read: Delores Marro].

## B.

### *Esposito*

The Esposito stipulation is, in all material respects, identical to the Marro stipulation

except for amounts of public assistance and the dates of the Chapter 7 petition and discharge. Esposito filed his Chapter 7 petition in this court on August 4, 1981, and obtained a discharge on December 1, 1981.

## II.

### ISSUES

Are the child support obligations assigned to the State of Connecticut pursuant to Title IV, section 402(a)(26) of the Social Security Act, as amended, released by a discharge in bankruptcy under Title 11 of the United States Code?

If not, what is the amount of the nondischarged debt?

## III.

### DISCUSSION

#### A.

#### *Dischargeability Of Child Support Obligations*

■ The resolution of this issue depends upon the reach of the amendment to section 456 of the Social Security Act, 42 U.S.C. § 656(b), by the Omnibus Budget Reconciliation Act of 1981, (Budget Act), Pub.L. No. 97–35 § 2334, 95 Stat. 863, effective August 13, 1981, which, in pertinent part provides:

"(b) A debt which is a child support obligation assigned to a state under section 402(a)(26) [42 U.S.C. § 602(a)(26)] is not released by a discharge in bankruptcy under Title 11, United States Code."

In *Marro,* the debtor filed his petition prior to the effective date of the Budget Act; but, in both *Marro* and *Esposito,* the discharge entered after that date. In each case, the debtor seeks to avoid the consequences of the Budget Act.

The fact pattern in these proceedings is not significantly different from the facts presented to this court in *In re Leach,* 15 B.R. 1005, 8 B.C.D. 587 (Bkrtcy.Conn.1981). In *Leach,* as here, the debtor's child support obligation was assigned to the State pursuant to 42 U.S.C. § 602(a)(26).[1] In *Leach,* as

---

1. 42 U.S.C. § 602(a)(26) provides in pertinent part

(a) A State plan for aid and services to needy families with children must (26) pro-

here, the effect of the Budget Act upon the debtor's obligation was an issue. I concluded that this court was bound by the principle of law stated by the Court of Appeals in this circuit in *In re Spell,* 650 F.2d 375 (2 Cir.1981). The court in *Spell* at 377 observed:

> This general principle that a court must apply the law that exists as of the date it renders its decision has been consistently applied in cases arising under the Bankruptcy Act. The issue has arisen most frequently in the context of a change of law in the period between the filing of a bankruptcy petition and the court's ruling on the bankrupt's application for a discharge from bankruptcy. In these cases, this circuit has repeatedly held that "[t]he grounds which would bar a discharge [must be] determined by the law in force at the time the judge passed on the question of discharge ..." *In re Carter,* 32 F.2d 186, 188 (2d Cir.1929); see also *United Wallpaper Factories v. Hodges,* 70 F.2d 243 (2d Cir.1934); *Royal Indemnity Co. v. Cooper,* 26 F.2d 585 (4th Cir.1928); *In re Sloss,* 192 F.Supp. 136 (S.D.N.Y.1961). It is noteworthy that this rule was applied even though the result for the bankrupt was harsh, as in *In re Carter, supra,* or *Royal Indemnity Co. v. Cooper, supra.*

■ Accordingly, I concluded in *Leach* that this court must apply the law in effect at the time of the determination of dischargeability, even if it differs from the law at the date the debtor received his discharge. Thus under the Budget Act, the child support obligations assigned to the State were not discharged.[2]

The debtors seek to distinguish *Leach* and *Spell* by a progression of arguments which *inter alia* contend that the purpose of the Budget Act is to protect children, that the Budget Act must be read with Code section 523(a)(5)(A)[3] to apply only in cases where the obligation arises out of a separation agreement, divorce decree, or property settlement agreement, and that there is a conflict between Code section 727(b)[4] and the Budget Act which must be resolved in favor of the debtors' discharge of the child support obligation. The debtors further argue that even if the Budget Act excepts child support obligations assigned to the State, its application in these cases would be retroactive and thus improper. Finally, the debtors contend that they have a vested right to a discharge of these obligations.

■ There is no merit to the debtors' claims. A traditional approach to statutory construction is to analyze the language of a statute in the context of legislative intent on the assumption that the legislative branch chose particular words to accomplish a specific purpose.

■ Here, the debtors' argument seems to suggest that Congress is without authority to amend the law or to provide for limitations upon a debtors' discharge in any body of law other than the Bankruptcy Code. Congress labors under no such restraint. It is abundantly clear from the plain language of the Budget Act that Con-

---

vide that, as a condition of eligibility, each applicant or recipient will be required (A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed.

2. *In re Leach, supra,* 15 B.R. 1005 at 1007, 1008, 8 B.C.D. at 589.

3. 11 U.S.C. § 523(a) as amended, provides in pertinent part

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act);

4. 11 U.S.C. § 727 provides in pertinent part

(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter ...

gress intended to modify the statutory formula for discharge under Code sections 727(b) and 523(a)(5)(A) by amending section 456 of the Social Security Act. The effect of the amendment, for the purposes of these proceedings, was to add to the exceptions to discharge provided by Code section 523(a), an additional exception—to wit, debts which are child support obligations assigned to the State under 42 U.S.C. § 602(a)(26).

■ The debtors' attempt to distinguish *Spell* is equally without merit. A debtor has no vested right in a discharge, particularly when, as here, the law changes *before* the discharge enters. As noted in *Leach,* "the discharge ordered . . . merely released the debtor from his dischargeable debts." At the time of the discharge in these cases, it was the law that the debtors' child support obligations to the State of Connecticut were not discharged. In fact, in *Marro* that was the law before the debtor filed his petition.

### B.

#### Scope Of Child Support

Having concluded that 42 U.S.C. § 656(b) renders the subject debts of the debtors nondischargeable, I next consider the nature and extent of the child support that is nondischargeable. Initially, however, I address the threshold issues raised by the defendant regarding this court's authority to consider this question.

■ The defendant first argues that the decision of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) has left this court without any jurisdiction. In *Northern Pipeline,* the Supreme Court held that the grant of power to Bankruptcy Judges in § 241(a) of Public Law 95–598 was unconstitutional. The Supreme Court's decision was ultimately stayed through December 24, 1982 to allow Congress time to enact remedial legislation. In the face of Congressional inaction, on December 22, 1982, the District Court for the District of Connecticut adopted an Emergency Resolution For Administration Of Bankruptcy System. This court presently operates under the mandate of that Resolution. *See White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983); *In re Hansen,* 702 F.2d 728 (8th Cir.1983); *In re Braniff Airways, Inc.,* 27 B.R. 231 (N.D.Tex.) aff'd, 700 F.2d 214 (5th Cir.1983); *In re Q1 Corp.,* 28 B.R. 647, 10 B.C.D. 522 (D.C.E.D.N.Y.1983); *Moody v. Martin,* 27 B.R. 991, 10 B.C.D. 575 (D.C.W.D.Wis.1983); *In re Northland Point Partners,* 26 B.R. 1019 (D.C.E.D.Mich.1983); *In re Color Craft Press, Ltd.,* 27 B.R. 962, 10 B.C.D. 182 (D.C.D.Utah 1983) (all of which uphold the validity of similar or identical rules). *Contra In re Seven Springs Apartments,* 10 B.C.D. 634 (Bkrtcy.N.D.Ga.1983) (providing a comprehensive analysis of problems related to the rule).

Under paragraph (c)(1) of the Emergency Resolution, all civil proceedings arising in or related to Title 11 are referred to the Bankruptcy Judge of this district. The instant adversary proceedings to determine the dischargeability of particular debts arise under Title 11 and are not included within the Emergency Resolution's definition of related proceedings. Emergency Resolution ¶ (d)(3)(A). Accordingly, this court has the power to enter judgments in these proceedings which shall be effective upon entry unless stayed by this court or a District Judge. Emergency Resolution ¶ (d)(2).

■ The defendants' reliance upon the abstention doctrine as stated in *Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 500–501, 61 S.Ct. 643, 645–646, 851 L.Ed. 971 (1940) is also unavailing. In *Pullman,* the plaintiffs sought in federal district court to enjoin an order of the Texas Federal Railroad Commission on the basis that the challenged order was invalid under both state law and various clauses of the federal constitution. *Id.* at 498, 61 S.Ct. at 644. The Supreme Court held that the district court should have abstained because a ruling by the state courts, unlike the decision by the district court, would be determinative of the state law question, and depending upon the answer to that question, the federal constitution question might be avoided. Accordingly, abstention in *Pullman* served both the interests of judi-

cial economy and the maintenance of a harmonious relationship between state and federal authority.

Here, *Pullman* is inapposite. The plaintiffs have invoked this court's jurisdiction, in part, to be relieved from their dischargeable debts. An issue regarding the dischargeability of a particular debt is first a federal question, although reference to state law might be necessary. *In re Spong,* 661 F.2d 6 (2d Cir.1981). Furthermore, the plaintiffs have not questioned the constitutionality of any state law.

The substance of the dispute over the amount of the debt to be excepted from discharge concerns the scope of the phrase "child support" contained in 42 U.S.C. § 656(b). The defendants argue that "child support" includes not only the support directly necessary for the child but also the support required by the child's caretaker. The defendants rely upon *Faraday v. Dube,* 175 Conn. 438, 399 A.2d 1262 (1978) and *Peterson v. Norton,* 395 F.Supp. 1351 (D.Conn.1975). The plaintiffs, on the other hand, contend that child support must be limited to the support owed to the child. In support of this contention, the plaintiffs point to various sections of P.L. 97–35,[5] which they claim indicate that Congress expressly provided for spousal support when it so intended. I find the defendant's position more persuasive.

In *Faraday v. Dube, supra,* the Connecticut Supreme Court addressed the meaning of the words "maintenance and support" found in Conn.Gen.Stat. § 52–442. The court held that "maintenance and support" included "all expenses necessary to maintain the child in life and health." *Id.* 175 Conn. at 444, 399 A.2d at 1266. The court elaborated in pertinent part as follows:

> If it is the mother who is caring for the child, and the welfare of the child is potentially endangered by the mother's inability to support herself, the court similarly has the authority under the statute to order the father to contribute to the support of the caretaker mother. The mother's right to support, unlike alimony, is not a personal right; she is entitled to

**5.** §§ 2331, 2332 and 2333.

support only to the extent that it is *necessary for the "support and maintenance" of the child.* [emphasis in original; citation omitted] *Id.*

In *Peterson v. Norton, supra,* the district court addressed two principal challenges regarding Connecticut's requirement, under its implementation of the ADFC program, that the father of an illegitimate child pay caretaker expenses for his child's mother. The first challenge was based on alleged violation of the Supremacy clause; the second, on an alleged violation of the Equal Protection clause. While the district court was unconvinced by either argument, the defendants here point to the court's rejection of the equal protection claim. In finding a rational relationship between permissible state goals and the distinction between acknowledged fathers of legitimate children on AFDC and acknowledged fathers of illegitimate children on AFDC, the court stated in part: "The dependent child's well being is inextricably linked to the caretaker mother's ability to attend to and care for the child, which in turn depends upon the extent to which provision is made for her needs." *Id.* at 1355.

Thus, the courts in *Faraday* and *Norton* both recognized that support of a child may entail support of that child's caretaker. Since Congress decided to make nondischargeable a "debt which is a child support obligation assigned to a state," it would appear that all payments for a child's support, must fall within the exception of 42 U.S.C. § 656(b). This, by analogy to *Faraday* and *Norton,* would include all AFDC payments to the child's caretaker.

Accordingly, I conclude that the entire debt assigned to the defendant in each of the above-captioned proceedings, pursuant to section 402(a)(26) of the Social Security Act, 42 U.S.C. § 602(a)(26), is nondischargeable.